636 A.2d 1143

**COMMONWEALTH of Pennsylvania,**

**v.**

**Joseph A. PIOLE, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 30, 1993.

Filed Jan. 24, 1994.

Thomas R. Ceraso, Greensburg, for appellant.

Kevin F. McCarthy, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before ROWLEY, President Judge, and JOHNSON and HUDOCK, JJ.

ROWLEY, President Judge:

Joseph A. Piole, (hereinafter "appellant") has appealed from the judgment of sentence imposed following his bench trial conviction of one count of Aggravated Assault [1] and one count

1. 18 Pa.C.S.A. § 2702.

of Simple Assault [2]. On appeal, he claims that he was prejudiced by the Commonwealth's failure to provide him with the statement of an eye-witness during pre-trial discovery such that he is now entitled to a new trial. Having reviewed this claim in light of the relevant law, we conclude that it is without merit. We affirm.

As a result of a bar fight, appellant was arrested and charged with a single count of Aggravated Assault, and two counts of Simple Assault. We approve and adopt the trial court's accurate summation of the factual background of this case as adduced from the trial testimony:

"On the evening of June 14, 1992, the victim, Lyle Lawver, along with his friends, Rege O'Rourke and Paul Christiann, went to Bellisario's Lounge, located on Duncan Avenue, [in] McCandless Township, [Allegheny County]. They arrived [at the bar] about 11 o'clock in the evening. Subsequently, Lawver observed his friend, O'Rourke, having a discussion with [appellant]. Lawver observed O'Rourke's mannerisms, which caused him to laugh. [Appellant,] apparently taking objection to Lawver's [amusement,] came around the horseshoe-shaped bar and confronted Lawver, asking if he was some sort of tough guy. Lawver responded [by] telling [appellant] [that] he obviously had a problem with somebody but it had nothing to do with [Lawver]. Lawver then turned his back on [appellant,] feeling threatened. He next remembered a beer bottle being smashed in his face.

Anthony Bellisario, the bar manager, testified that [appellant] was one of four men who were involved in an altercation earlier that evening. Subsequently, the four men began began 'banging other people around.' Bellisario decided [not to serve the four men any more alcoholic beverages]. However, they asked if they could have one more drink, and Bellisario [acquiesced]. He testified: 'And, after I gave them the other round of drinks, it looked like things [had] gotten worse [than they were] before.' Bellisario [also testified] that 10 or 15 minutes later, he observed [appel-

2.  18 Pa.C.S.A. § 2701.

lant] walk behind [Bellisario] to the other side of the bar, where he took a position next to the victim. As Bellisario watched both sides of the bar, he heard a bottle shatter and then observed [appellant] holding the victim with one hand and punching him in the face with the other.

Bartender Cathy Huncheck stated [that] she heard noise on the other side of the bar and then heard glass breaking. When she turned around, she observed [appellant's] arms moving as though he were punching, but [she] had no idea who was on the floor. When [onlookers] picked [the victim] up, she observed that his face was [very] bloody.

Kitchen chef, John Sciulli, testified that he heard broken glass and a lot of noise. He ran over to where the incident occurred and observed [appellant] on top of the victim swinging his arms up and down.

Sandra Lubbert, a real estate office manager, was at Bellisario's [Lounge] that evening because she dated a man who worked there. She observed the victim, apparently leaning against the bar, with several men surrounding him. She then observed [appellant] hit [the victim] with [a] beer bottle, knocking him up against the wall ... behind him. [Appellant] continued his assault [upon the victim] by punching [him] several times in the face as he slid down the wall onto the floor. [Ms. Lubber] observed that the [beer] bottle broke upon impact with Lawver's face and that [appellant] struck [Lawver] at least eight to ten times.

Subsequently, [appellant] admitted to McCandless Township Police Officer Gary W. Anderson that he [had] struck Lawver with a bottle, [but contended] that it was in retaliation [for] being 'sucker-punched.' At trial, however, [appellant] absolutely denied [ever] striking Lawver with a bottle. Th[e] [trial] court found [appellant] and his defense witnesses to be absolutely uncredible."

(Trial Court Opinion, 3/5/93, pp. 2–4).

The trial court found appellant guilty of Aggravated Assault and one count of Simple Assault as a result of the altercation. However, appellant was found not guilty as to the second

count of Simple Assault. Appellant filed timely post-verdict motions, which were then denied by the trial court. Appellant thereafter filed the instant appeal, contending that he is entitled to a new trial because of the Commonwealth's failure to provide him with the statement of eyewitness Sandra Lubbert in accordance with the provisions of Rule 305(B)(2) of the Pennsylvania Rules of Criminal Procedure[3]. That rule provides, in pertinent part, as follows:

(2) **Discretionary with the Court:** In all court cases, . . ., if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(a) the names and addresses of eyewitnesses;

(b) all written or recorded statements and substantially verbatim oral statements of eyewitnesses the Commonwealth intends to call at trial; . . . .

Pa.R.Crim.P. 305(B).

Appellant argues that the Commonwealth's failure to provide him with the statement of Sandra Lubbert prior to trial prejudiced him in two distinct ways. First, appellant claims that because he was not aware of her statement prior to trial he could not adequately prepare for cross-examination of that witness. In his brief, appellant asserts that there is "no way of knowing whether or not her prior statement may have permitted defense counsel to impeach her credibility."

■ We find appellant's claim in this regard to be without merit. In so concluding, we approve and adopt the trial

3. It should be noted that the Commonwealth did list the name of eyewitness Sandra Lubbert as one of the witnesses it intended to call at trial and further, Ms. Lubbert's name was noted on the police report, of which appellant was furnished a copy. Thus, if appellant had so desired, he could have conducted his own independent investigation as to the nature of Ms. Lubbert's connection to the case. Clearly, the Commonwealth did not attempt to hide this witness from appellant.

court's analysis and disposition of this issue, as stated in its well-reasoned opinion:

"It has been held that the prosecution does not violate the discovery rules in instances where it fails to provide the defense with evidence that it does not possess or [of] which it is unaware [during pre-trial discovery, even if the evidence is in police custody]. *Commonwealth v. Bonacurso,* 500 Pa. 247, 455 A.2d 1175 (1983), [*cert. denied,* 462 U.S. 1120, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983) ]. Such is the case here."

(Trial Court Opinion, 3/5/93, p. 8) [4].

■ Moreover, as the Commonwealth notes in its brief, the record is very unclear as to whether Ms. Lubbert's statement was even written down by the police officer who questioned her, much less in a form which would be discoverable. The courts of this Commonwealth have consistently held that in order for a document sought by defense counsel to be included under Rule 305(B)(2) as a witness' statement, it must be either a substantially verbatim account of the witness' declarations or be approved by the witness; notes made by a police officer when questioning a witness have been held to be insufficient. *See e.g. Commonwealth v. Bailey,* 322 Pa.Super. 249, 469 A.2d 604 (1983) (where this Court held that the written report of police officer which was only a summary of the words of the victim and not a verbatim statement could not be used to impeach the victim on cross-examination).

In the instant case, Ms. Lubbert testified that at the time she was questioned by the police, she was not sure as to whether the police wrote down the information she had given them. She also testified that she was not asked to sign, or otherwise verify, the information which she gave to the officer, such that any notes which were written down by the officers were not discoverable. The trial court properly admitted the

4. In this regard, *see also: Commonwealth v. Montgomery,* 533 Pa. 491, 496–97, 626 A.2d 109, 112 (1993); *Commonwealth v. Battiato,* 422 Pa.Super. 285, 297, 619 A.2d 359, 365 (1993); *Commonwealth v. Rakes,* 398 Pa.Super. 440, 444, 581 A.2d 212, 214 (1990), *alloc. denied,* 527 Pa. 599, 589 A.2d 690 (1991).

testimony of Sandra Lubbert and appellant suffered no prejudice as a result.

Further, as noted by the trial court:

"... the testimony of Sandra Lubbert was cumulative. Th[e] trial court [c]ould have reached the same adjudication even if she had not testified. If error did occur, and th[is] Court does not believe [that] it did, such error was harmless."

(Trial Court Opinion, 3/5/93, p. 8–9).

■ Appellant also contends that had he been aware that an eyewitness would testify against him, he would not have waived his right to a jury trial. We conclude, as did the trial court, that this claim is meritless. In the words of our Supreme Court:

"... there are no differences in a defendant's rights or the legal principles involved between a jury case and a non-jury case. The same rules of evidence apply and the same burdens of proof remain.

\* \* \* \* \* \*

Here, appellant voluntarily, after a full and extensive colloquy, chose a non-jury method of trial. (citation omitted). The fairness of that method is not determined by the type of evidence offered or the number of witnesses introduced. Absent error of law, bias, or prejudice, there is no inherent unfairness in a bench trial as contrasted to a trial by jury. We cannot accept that, once chosen, one form of the right to an open and public trial is less productive of fairness than the other or that one is less capable of rendering a fair verdict upon the same evidence."

*Bonacurso, supra* 500 Pa. at 255, 455 A.2d at 1179–1180. Appellant has not explained his implied claim that his bench trial was less fair than a jury trial would have been in light of Ms. Lubbert's testimony nor can we find any such explanation. Thus, his claim in this regard must fail.

Judgment of sentence affirmed.