781 A.2d 1136

COMMONWEALTH of Pennsylvania, Appellee,

v.

Donald Scott BURKE, Appellant.

No. 6 W.D.2000.

Supreme Court of Pennsylvania.

Argued Sept. 12, 2000.

Decided Oct. 17, 2001.

404

Kevin G. Sasinoski, Mitchell A. Kaufman, M. Susan Ruffner, Pittsburgh, for Donald Scott Burke.

Michael W. Streily, Pittsburgh, for Commonwealth of Pennsylvania.

Before FLAHERTY, C.J., ZAPPALA, CAPPY, CASTILLE, NIGRO, and SAYLOR, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

The issue in the instant appeal is whether a dismissal of criminal charges is an appropriate sanction for the Commonwealth's failure to disclose certain evidence to the defense

prior to trial. For the following reasons, we hold that the sanction of dismissal by the trial court was improper and, accordingly, we affirm the order of the Superior Court.

On March 27, 1996, appellant Donald Scott Burke was working as an assistant manager at the Mardi Gras Restaurant in Ohio Township. Richard Graham, who was seventeen years old at the time, was also working at the restaurant on that day as a busboy. The Commonwealth charged that, at approximately 6:00 p.m. that evening, appellant approached Graham and asked him to participate in a sham robbery. Graham agreed. At approximately 11:30 p.m., Graham met appellant on the second floor of the restaurant and appellant gave Graham money from the restaurant's cash registers. Graham bound appellant's hands and feet and hid the stolen money outside. Graham then reentered the restaurant and threw a rack of glasses down the steps leading to the second floor. When one of the restaurant's owners, John Connolly, and other employees responded to the commotion, Graham told them that two men had run down the stairs and knocked him over. Connolly subsequently discovered appellant on the second floor of the restaurant with tape on his hands and feet, his legs tied, and a napkin stuffed in his mouth.

Ohio Township police were the first to arrive at the scene. Appellant and Graham each gave an oral statement to township officers that two men had robbed the restaurant at gunpoint and then escaped through the restaurant's side door. These statements were reflected in an Ohio Township Police Incident Report. In addition, appellant and Graham provided Ohio Township police with handwritten statements which were consistent with their oral statements. Later that night, the Ohio Township police requested the assistance of the Allegheny County police, who thereafter assumed jurisdiction over the investigation.

On March 29, 1996, Melodie Manojlovich, a friend of Graham's, provided a handwritten statement to the Ohio Township police in which she reported that Graham had admitted to her that he and appellant had fabricated the Mardi Gras robbery. Based on this statement, Graham was charged as a

juvenile with various offenses relating to the incident. On the day of Graham's hearing in Juvenile Court on these charges, he entered into an agreement with the Commonwealth by which these charges, as well as an unrelated drug charge, would be dismissed in exchange for his testimony against appellant.

On July 18, 1996, appellant was charged with theft by unlawful taking,[1] false reports to law enforcement authorities [2] and criminal conspiracy.[3] On August 2, 1996, appellant made an informal request for pre-trial discovery and inspection. Almost three months later, on October 24, 1996, appellant filed a Motion to Compel Discovery and Inspection, in which he specifically requested that the Commonwealth disclose a variety of items, including material evidence favorable to the accused; written, oral or recorded confessions or inculpatory statements; and Graham's prior criminal record and information regarding any charges pending against him. Thereafter, the Commonwealth represented to the trial court that it had complied with the discovery requests.

Appellant waived his right to a jury and proceeded to a bench trial before the Honorable Jeffrey A. Manning. During the defense's cross-examination, Graham testified that he had provided the police with a handwritten statement on the night of the incident. The following exchange then took place:

> [Trial Defense Counsel]: Your Honor, we have not been supplied with that. I never knew there was a statement he gave....

> [The Prosecutor]: He never gave a written statement to the Allegheny County police. Judge, to our police officer's recollection, there was never a written statement from this guy.

> The Court: The question is does he have a written statement in his file or in his possession?

> [The Prosecutor]: No, we do not. We do not have one.

1.  18 Pa.C.S. § 3921(a).

2.  18 Pa.C.S. § 4906(b)(1).

3.  18 Pa.C.S. § 903(a)(1).

The Court: That answers that one.

T.T. at 39.

Later in the proceedings, the defense asked for a copy of the handwritten statement appellant had given to the police on the night of the robbery. The prosecutor initially represented that she did not have this statement either. Shortly after this exchange, however, the prosecutor produced appellant's handwritten statement. Defense counsel again expressed concern that the Commonwealth also had Graham's statement in its possession but had failed to turn it over. The trial court then ordered the Commonwealth to conduct a thorough search for Graham's statement and adjourned the proceedings to the following afternoon.

The next day, the prosecutor informed the trial court that she had found Graham's handwritten statement. In addition, the prosecutor reported that she had found four other items responsive to appellant's pre-trial discovery request which had not previously been furnished to the defense: an Incident Report, Supplementary Investigation Report and Complaint Record completed by the Ohio Township Police Department and the handwritten statement of Melodie Manojlovich.

The prosecutor attempted to explain the failure to deliver these materials sooner as an unintentional oversight resulting from the fact that two police "jurisdictions"—Ohio Township and Allegheny County—were involved in the case and had failed to adequately communicate with each other on the matter. The prosecutor noted that she had repeatedly asked the Allegheny County police for the documents, and had been told that they did not have them. After the documents were found, she further noted, the Allegheny County police officer she spoke to could not explain why they had not appeared in the pre-trial discovery.

With respect to whether this circumstance amounted to a discovery violation, the prosecutor cited two cases, *Commonwealth v. Bonacurso,* 500 Pa. 247, 455 A.2d 1175 (1983), and *Commonwealth v. Piole,* 431 Pa.Super. 391, 636 A.2d 1143 (1994), for the proposition that the prosecution does not violate

discovery rules when it fails to provide the defense with evidence it does not possess and of which it is unaware, even if the evidence is in police custody. The trial court responded by stating that, for discovery purposes, "[t]he Commonwealth includes the district attorney and all police agencies involved in the prosecution of the case." For this reason, the trial court found that the Commonwealth had violated its discovery obligation.

On the question of the appropriate remedy, the prosecutor requested a continuance to allow the defense an opportunity to review the materials. Appellant, on the other hand, moved for a judgment of acquittal "on the basis of the misconduct of the prosecution." T.T. at 111. The trial court considered the acquittal motion as a motion to dismiss based upon prosecutorial misconduct and granted the motion, dismissing all charges against appellant. The trial court specifically found that the prosecutor's failure to discover the evidence sooner was not intentional; in the court's view, however, the prosecution had been "grossly negligent." The court then held that the tardy disclosure violated the Commonwealth's due process obligation to disclose exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, as well as its obligations under Rule 305[4] of the Pennsylvania Rules of Criminal Procedure. The trial court further concluded that dismissal of the charges was the only appropriate remedy. In its opinion, the trial court explained why it believed dismissal was required:

> The witness whose statements had been withheld [Graham] had already testified, been cross-examined and was released from his subpoena. The defendant was deprived of the right and opportunity to effectively cross-examine the Commonwealth witnesses, particularly his alleged accomplice. Because this defendant was deprived of that important right through the failure of the prosecution to abide their solemn obligation, the only appropriate remedy was the dismissal of the charges. If the non-disclosure had truly been something beyond the control of counsel, then perhaps the

4. Rule 305 has been renumbered as Rule 573, effective April 1, 2001.

declaration of a mistrial or some lesser remedy would have been appropriate. Here, however, the prosecution's conduct in failing to exercise the minimal level of due diligence necessary to insure that its obligations were carried out, was so egregious, dismissal was the only appropriate remedy.

Trial Court Op. at 14–15.

On the Commonwealth's appeal, the Superior Court reversed. The Superior Court disagreed with the trial court's finding that the prosecutor's failure to secure the evidence at issue was the product of "gross negligence." In the Superior Court's view, the record revealed "no lack of diligence by the prosecution in obtaining and disclosing evidence" because the prosecutor's initial investigation failed to uncover these statements and, when specific inquiries were made of police, the response had been that these items did not exist. Citing this Court's decision in *Commonwealth v. Montgomery*, 533 Pa. 491, 626 A.2d 109 (1993), the Superior Court noted that the prosecution cannot be deemed to have violated discovery rules when, despite reasonable inquiry, it fails to discover and disclose evidence it neither possesses nor is aware of, such as evidence exclusively in police control. In addition, while the Superior Court agreed that the defense was entitled to examine the late-disclosed evidence and that a remedy for its nondisclosure was appropriate, it disagreed with the remedy fashioned by the trial court. In the Superior Court's view, dismissal was far too extreme a remedy; the appropriate remedy was a continuance.

This Court granted allocatur to clarify the duty of prosecutors in securing discovery materials and to examine whether and when dismissal is an appropriate sanction for a discovery violation.

■ Appellant contends that, in light of *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the fact that *Brady* material was in the possession of the police, rather than the prosecutor, is irrelevant to the Commonwealth's responsibilities under *Brady*. In addition, appellant argues

that the evidence here was "readily available and accessible" to the prosecution since it was ultimately discovered in a police detective's file. On the question of *Brady* materiality, appellant argues that the tardy disclosure prejudiced him because he was unable to cross-examine Graham with his prior statement. Furthermore, appellant notes that *Brady* material is more effective to the defense the sooner it is disclosed. Finally, on the question of remedy, appellant argues that "[n]o remedy short of dismissal is adequate to protect the rights of the accused."

The Commonwealth does not dispute that at least some of this evidence was subject to disclosure under *Brady* and/or Pa.R.Crim.P. 305—*e.g.*, Graham's statement to the police which, if believed, would be exculpatory, and appellant's own statement to police. The Commonwealth also no longer argues that its failure to discover and disclose these statements is excused because the evidence was in the possession of the police, rather than the prosecutor. The Commonwealth argues, instead, that the Superior Court correctly found that the remedy of dismissal was inappropriate here. This is so, the Commonwealth contends, because the trial court did not even attempt to determine if appellant suffered actual prejudice from the non-disclosure. The Commonwealth argues that no such prejudice arose since the undisclosed statements were cumulative and consistent with the information already provided to appellant. In addition, the Commonwealth argues that the fact that the prosecutor was not personally in possession of the discovery materials is certainly relevant to the question of the appropriate remedy here, and weighs in favor of something short of a discharge. The claimed negligence of the prosecutor, the Commonwealth argues, does not warrant such an extreme sanction.

The governing law is easily enough stated. In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83

S.Ct. 1194. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976), and that the duty encompasses impeachment evidence as well as directly exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985). On the question of materiality, the Court has noted that "[s]uch evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 281, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999) (quoting *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375). The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. "Rather, the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* at 290, 119 S.Ct. 1936 (quoting *Kyles*, 514 U.S. at 435, 115 S.Ct. 1555). Thus, there are three necessary components that demonstrate a violation of the *Brady* strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued. *Id.* at 281, 119 S.Ct. 1936.

Rule 305 was promulgated in response to the dictates of *Brady*. *See Commonwealth v. Green*, 536 Pa. 599, 607, 640 A.2d 1242, 1246 (1994). The rule provides, in pertinent part, as follows:

**(B) Disclosure by the Commonwealth**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applica-

ble, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth.

Pa.R.Crim.P. 305(B)(1)(a). In the event of a violation of Rule 305, the trial court "may order [the offending] party to permit discovery or inspection, may grant a continuance, or may prohibit [the offending] party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances." Pa.R.Crim.P. 305(E).

Notwithstanding that the Commonwealth has abandoned the argument that there was no discovery violation because it was not responsible to secure and disclose evidence in the possession of the police, some preliminary examination of the status of the law in that regard is necessary to the proper resolution of this appeal. There is, in fact, an unbroken line of decisions from this Court and the Superior Court holding that the prosecution does not violate Rule 305(B) when it fails to provide the defense with evidence that it does not possess and of which it is unaware, such as when the evidence is exclusively in police custody. *See, e.g., Commonwealth v. Gribble,* 550 Pa. 62, 703 A.2d 426 (1997); *Commonwealth v. Montgomery,* 533 Pa. 491, 626 A.2d 109 (1993); *Commonwealth v. Colson,* 507 Pa. 440, 490 A.2d 811 (1985); *Commonwealth v. Bonacurso,* 500 Pa. 247, 455 A.2d 1175 (1983); *Commonwealth v. Piole,* 431 Pa.Super. 391, 636 A.2d 1143 (1994); *Commonwealth v. Battiato,* 422 Pa.Super. 285, 619 A.2d 359 (1993); *Commonwealth v. Rakes,* 398 Pa.Super. 440, 581 A.2d 212 (1990). Furthermore, the text of Rule 305(B)(1)(a) supports the distinction in this line of cases between police and prosecutors. Both the trial prosecutor and the Superior Court cited to these cases in response to the allegation that the nondisclosure here was a discovery violation.

Appellant argues, and the trial court found, that this statement of law cannot stand, at least with respect to exculpatory material, in light of *Kyles.* In *Kyles,* the United States

Supreme Court specifically rejected the notion that *Brady* does not apply to evidence "known only to police investigators and not to the prosecutor." *Kyles,* 514 U.S. at 438, 115 S.Ct. 1555; *see also Strickler,* 527 U.S. at 280–81, 119 S.Ct. 1936. As the Supreme Court explained in *Kyles:*

> To accommodate [the view that the prosecution is not accountable for undisclosed evidence known only to the police] would . . . amount to a serious change of course from the *Brady* line of cases. In the State's favor it may be said that no one doubts that police investigators sometimes fail to inform a prosecutor of all they know. But neither is there any serious doubt that "procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it." *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Since, then, the prosecutor has the means to discharge the government's *Brady* responsibility if he will, any argument for excusing a prosecutor from disclosing what he does not happen to know about boils down to a plea to substitute the police for the prosecutor, and even for the courts themselves, as the final arbiters of the government's obligation to ensure fair trials.

514 U.S. at 438, 115 S.Ct. 1555. Thus, under *Kyles,* the prosecution's *Brady* obligation clearly extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.[5] To the extent that Rule 305(B) and the cases construing it could be read to suggest otherwise, such readings must bow to *Kyles'* elaboration of the prosecutor's *Brady* duty respecting exculpatory evidence.[6]

**5.** The Commonwealth argues that the trial court's reliance on *Kyles* was misplaced because, in that case, the prosecutor's office knew of at least some undisclosed material evidence prior to trial, whereas in the instant matter, the prosecutor was completely unaware of the relevant statements. That factual distinction, however, hardly removes the force of the *Kyles* Court's unequivocal and broadly stated teachings on the nature of the *Brady* responsibility. This Court cannot ignore the obvious implications of *Kyles.*

**6.** It should be noted that this Court's Rule 305(B) cases discussing the police/prosecutor distinction have either involved non-exculpatory (*i.e.,*

The next question is whether the tardily-disclosed material here, which the Commonwealth concedes should have been disclosed pre-trial under Rule 305, meets *Brady*'s materiality requirement. Resolution of this question would require a determination of whether there was a reasonable probability that the undisclosed evidence would have led to a different result. On this point, there is some dispute between the parties. Neither of the courts below, however, engaged in an appropriate *Brady* materiality analysis. The trial court approached the question generically, viewing the non-disclosure as of a *type* that was *necessarily* prejudicial, without evaluating the actual evidence and assessing what effect it may have had on the outcome of the trial. (Appellant adopts a similar approach here, arguing generally about the *inherent* potential for prejudice, rather than articulating how the specific information at issue might have made a difference at trial.) The Superior Court, meanwhile, focused on the propriety of the remedy, simply assuming for its purposes that the undisclosed materials "likely contained exculpatory evidence."

Given this state of the record, this Court will not resolve in the first instance the fact-intensive question of whether the evidence would have affected the outcome. The Commonwealth having conceded that there was at least a violation of Rule 305, if not *Brady*, and the court below having aborted the trial and ordered a discharge as a remedy, we must of necessity address that succeeding reality. Accordingly, for the purpose of addressing the unavoidable and more important question of the propriety of the remedy here, we will assume, as the Superior Court did, that the evidence was indeed material under *Brady*.

As a Rule 305 matter, the trial court has discretion in framing an appropriate remedy for a discovery violation. The "remedy" provision in the Rule lists numerous appropriate courses of remedial action, such as permitting discovery or inspection, granting a continuance, or prohibiting introduction of evidence. It is notable, however, that the Rule does not

non-Brady) evidence (*see Gribble, Montgomery,* and *Colson*), or involved an unfounded claim of a failure to disclose (*see Bonacurso*).

authorize an outright dismissal of charges, except to the extent that the residual phrase, "or ... such other order as the [the court] deems just under the circumstances," could be said to encompass the extreme remedy of discharge. It is equally notable that the trial court and appellant have cited no cases in the Supreme Court's *Brady* line, and our research has revealed none, that approve or require a discharge as a remedy for a discovery violation. In fact, the precedents cited by the trial court and appellant support the view that the discharge ordered here was too severe. *See, e.g., Kyles*, 514 U.S. at 454, 115 S.Ct. 1555 (new trial granted where net-effect of seven evidentiary items suppressed by state raised reasonable probability that disclosure would have produced different result at trial); *Giglio v. United States*, 405 U.S. 150, 155, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) (prosecution's failure to disclose alleged promise made to its key witness that he would not be prosecuted if he testified for government required new trial).

■ Thus, while it is undoubtedly true that the trial court possesses some discretion in fashioning an appropriate remedy for a *Brady* violation, that discretion is not unfettered. It must be exercised in light of the competing values weighed in the *Brady* analysis, and in light of the teachings in prior cases involving similar concerns. *See Coker v. S.M. Flickinger Co., Inc.*, 533 Pa. 441, 447, 625 A.2d 1181, 1184 (1993) ("[D]iscretionary power can only exist within the framework of the law ...").

The stated basis for the discharge here was the trial court's conclusion that the prosecutor's "grossly negligent" failure to discover and disclose the evidence sooner amounted to "prosecutorial misconduct." It was simply sufficient for the trial court that the non-disclosure was within the control of the prosecutor. *See* Trial Court Op. at 14 ("If the non-disclosure had truly been something beyond the control of counsel, then perhaps the declaration of a mistrial or some lesser remedy would have been appropriate"). In this analysis, the trial court did not so much as examine, much less attempt to account for, this Court's existing jurisprudence on prosecutori-

al misconduct in which we have, on numerous occasions, specifically addressed whether and when alleged misconduct by the prosecutor requires the sanction of discharge. An examination of those cases proves beyond question that the trial court abused its discretion here.

Because of the compelling societal interest in prosecuting criminal defendants to conclusion, this Court has recognized that dismissal of charges is an extreme sanction that should be imposed sparingly and, relevant to the question here, only in cases of blatant prosecutorial misconduct. As my learned colleague Justice Cappy, in his Opinion Announcing the Judgment of the Court in *Commonwealth v. Shaffer*, 551 Pa. 622, 627, 712 A.2d 749, 752 (1998), explained:

Dismissal of criminal charges punishes not only the prosecutor ... but also the public at large, since the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law. Thus, the sanction of dismissal of criminal charges should be utilized only in the most blatant cases. Given the public policy goal of protecting the public from criminal conduct, a trial court should consider dismissal of charges where the actions of the Commonwealth are egregious and where demonstrable prejudice will be suffered by the defendant if the charges are not dismissed.

*Id.* at 628, 712 A.2d at 752; *see also Commonwealth v. McElligott*, 495 Pa. 75, 81, 432 A.2d 587, 589 (1981) ("The remedy of discharge without a fair and complete fact-finding procedure is extreme and will not be invoked absent deliberate bad faith prosecutorial misconduct"); *Commonwealth v. Smith*, 532 Pa. 177, 186, 615 A.2d 321, 325 (1992) (dismissal of charges is appropriate only where "prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, [or where] the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial").

An example of egregious prosecutorial misconduct which has been deemed sufficient to warrant dismissal may be found in Smith. In *Smith*, the Commonwealth deliberately withheld

from a capital defendant: (1) the existence of an agreement with its chief witness pursuant to which he received lenient treatment at sentencing on unrelated charges in exchange for his testimony, and (2) material, exculpatory physical evidence that it had discovered mid-trial. The physical evidence consisted of grains of sand that were found between the toes of the murder victim at her autopsy. The sand was consistent with Smith's defense that the crime had been committed in Cape May, New Jersey, by others, and not by him in Pennsylvania, as the Commonwealth had alleged. At trial, when a Pennsylvania state trooper testified on cross-examination that granular particles which looked like sand had been removed from the victim's body, the Commonwealth implied that he had fabricated his testimony and the trial prosecutor recommended to his superior that he investigate the feasibility of prosecuting the state trooper for perjury. While the trial was still in progress, the state police discovered the adhesive "lifters" that had been used to remove and retain the sand from the victim's feet. The Commonwealth, however, failed to disclose this evidence and, indeed, continued to suppress the evidence for over two years while the case was on direct appeal to this Court. *Id.* at 182–83, 615 A.2d at 323–24. In light of this deliberate, bad faith failure to disclose potentially exculpatory evidence, this Court discharged Smith under the double jeopardy clause of the Pennsylvania Constitution, opining that "it would be hard to imagine more egregious prosecutorial tactics." *Id.* at 182, 615 A.2d at 323.

On the other hand, a mere finding of willful prosecutorial misconduct will not necessarily warrant dismissal of charges. For example, in *Commonwealth v. Moose*, 529 Pa. 218, 602 A.2d 1265 (1992), this Court found that the prosecutor's failure to inform defense counsel of a witness's police statement which contained incriminating admissions allegedly made by the defendant amounted to a "willful violation of Rule 305." *Id.* at 235, 602 A.2d at 1274. The Court held that "[t]he district attorney's conduct raise[d] significant ethical concerns" and referred the matter to the Disciplinary Board for its consideration. *Id.* at 236 n. 8 & 240 n. 12, 602 A.2d at 1274

n. 8 & 1276 n. 12. Nonetheless, the Court did not dismiss the charges against Moose, but rather remanded the matter for a new trial. *Id.* at 240, 602 A.2d at 1276.

The prosecutor's conduct in the matter *sub judice* does not approach that of the prosecutor in *Moose,* let alone resemble the deliberate, bad faith prosecutorial misconduct which warranted dismissal under *Shaffer, McElligott* and *Smith.* There is no evidence here pointing to deliberate overreaching by the prosecutor. Indeed, it is not even apparent that the undisclosed evidence differed in quality from information already made available to appellant. For example, several hours after Graham gave his written statement to the Ohio Township police relating as true the false robbery scenario he and appellant had concocted, he orally recounted the same version of events to the Allegheny County police, who took notes summarizing his statement. These notes were disclosed to appellant prior to trial. Relying on these notes, appellant's trial counsel cross-examined Graham at length regarding the "exculpatory" version of events he had given to police on the night of the incident. Given the cumulative nature of the late-disclosed evidence, it cannot plausibly be argued that the prosecution intentionally sought to suppress these materials in an effort to bait appellant into seeking a mistrial or to deprive appellant of a fair trial.

In addition, as noted above, the trial prosecutor relied upon the *Bonacurso* line of cases from this Court, which held, consistent with the language of Rule 305, that the prosecutor is under no obligation to disclose evidence known only to the police and not the prosecution. Although *Kyles* makes clear that such is not the law respecting exculpatory information, the existence of the *Bonacurso* cases corroborates that there was an absence of prosecutorial overreaching here. The prosecutor's explainable misunderstanding of her *Brady* obligation militates against the view that she deliberately failed to pursue and locate evidence known only to the police in an effort to provoke appellant into seeking a mistrial or to deprive appellant of a fair trial.

Rather than prosecutorial misconduct, it appears that this case primarily involves miscommunication between the police departments involved in the investigation and/or police mishandling of the evidence. The materials were compiled by the Ohio Township police. The Allegheny County police, however, assumed jurisdiction over the investigation several hours after the incident. The prosecutor relied exclusively upon the Allegheny County police to supply her with evidence responsive to the defense's discovery requests. The prosecutor suggested that there may have been some confusion between the departments as to whether the Ohio Township police had, in fact, turned over the items in question to the Allegheny County police. It was also suggested that Graham's handwritten statement may have been misfiled by the Allegheny County police in a file on an unrelated matter involving the Mardi Gras restaurant. Whatever may have been the reason for the nondisclosure here, it is apparent from the record that it did not result from deliberate misconduct by the prosecutor designed to compel appellant into moving for a mistrial or to deprive appellant of a fair trial.

While this Court does not minimize the ethical and legal obligations of the prosecution to comply with lawful discovery requirements, where there is no evidence of deliberate, bad faith overreaching by the prosecutor intended to provoke the defendant into seeking a mistrial or to deprive the defendant of a fair trial, the proper remedy for the Commonwealth's failure to disclose exculpatory materials should be less severe than dismissal. *See, e.g., Commonwealth v. Strong,* 563 Pa. 455, 470, 761 A.2d 1167, 1175 (2000) (new trial granted where prosecution failed to disclose that co-defendant witness was told he would be treated with considerable leniency in own criminal case in exchange for his testimony against defendant); *Commonwealth v. Green,* 536 Pa. 599, 609, 640 A.2d 1242, 1247 (1994) (new trial granted where Commonwealth violated *Brady* and Rule 305 by failing to disclose statements made by witness about out-of-court statements purportedly made to him by accomplice in which accomplice claimed responsibility for murder); *Commonwealth v. Wal-*

*lace,* 500 Pa. 270, 281, 455 A.2d 1187, 1193 (1983) '(new trial granted where prosecutor's office withheld substantial portions of its primary witness's criminal record).

By ordering the dismissal of the charges against appellant on grounds of prosecutorial misconduct, the trial court failed to identify and apply the relevant jurisprudence. Upon consideration of the relevant cases, it is apparent that the discharge order was an abuse of discretion and cannot stand. Accordingly, we affirm the Superior Court's reversal of the trial court's dismissal of the charges against appellant and remand this matter to the trial court for a new trial.[7]

Madame Justice NEWMAN did not participate in the consideration or decision of this case.

---

**7.** In light of the fact that the trial court dismissed the charges, thereby terminating the first trial, the only appropriate remedy is remand for a new trial.