J-A08044-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KAREEM JOHNSON, | : | |
| | : | |
| Appellant | : | 927 EDA 2016 |

Appeal from the Order March 3, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1300424-2006

BEFORE:    PANELLA, LAZARUS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED JUNE 27, 2018**

Kareem Johnson (Appellant) appeals from the March 3, 2016 order denying his motion to bar retrial on double jeopardy grounds. Specifically, Appellant argues that the Commonwealth should be barred from retrying him for the murder of Walter Smith because the Commonwealth's deliberate indifference during trial preparation resulted in a misrepresentation of DNA evidence at his first trial. After review, we affirm.

We begin with the factual and procedural history.

On December 15, 2002, Appellant and at least one other person shot Walter Smith to death on the street in front of a bar in North Philadelphia. Some three months before his violent death, Mr. Smith had told police that an acquaintance of Appellant's, Clinton Robinson, was responsible for the August 2002 murder of another person, Margaret Thomas. Appellant was arrested in May 2006, for the murder of Mr. Smith. The Commonwealth's theory of the case was that Appellant had killed Mr. Smith in order to prevent him from testifying against Mr. Robinson. The

---

*Retired Senior Judge assigned to the Superior Court.

Commonwealth relied upon physical evidence that included the following: 1) two different types of ammunition recovered from the murder scene as well as from Mr. Smith's body, showing that Appellant had acted in concert with at least one other individual in the murder; and 2) a red baseball-type cap found at the scene that contained Appellant's DNA on the sweatband and Mr. Smith's DNA in blood stains on the brim. In addition, the Commonwealth presented the testimony of Bryant Younger, who had heard Appellant make two statements with which he implicated himself in Mr. Smith's murder. The defense sought to cast doubt upon the Commonwealth's evidence largely by challenging the significance of the DNA evidence and by characterizing Mr. Younger as a "rat" who would do anything to avoid an impending life sentence for a federal drug conviction.

Appellant was convicted by a jury in June 2007, of first-degree murder, criminal conspiracy, and possession of an instrument of crime. Appellant was sentenced to death after the jury found that any mitigating circumstances were outweighed by the aggravating circumstance that Appellant had a significant history of felony convictions involving the use of violence to the person.[1] 42 Pa.C.S. § 9711(d)(9). Appellant was also sentenced to a concurrent term of 20 to 40 years' imprisonment on the conspiracy conviction. Appellant now appeals his judgment of sentence to this Court and raises six guilt phase issues and one penalty phase issue.

_____

[1] In March 2006, Appellant had been convicted of the first-degree murder of a 10–year old child who was shot while on his way to school and of aggravated assault upon the crossing guard at the school, who was also shot. Neither of these individuals was an intended victim of Appellant or the group of men of which he was a part. Appellant was sentenced to life in prison for the murder and an aggregate consecutive term of 23 ½ to 47 years' imprisonment for the aggravated assault and related offenses. That judgment of sentence was affirmed by the Superior Court on October 18, 2007, and th[e Supreme] Court subsequently denied a petition for allowance of appeal. **Commonwealth v. Johnson**, 943 A.2d 315 (Pa. Super. 2007) ([t]able), *appeal denied,* [] 952 A.2d 675 ([Pa. ]2008). We note that Appellant declined the opportunity to plead guilty to the instant charges in return for imposition of a life sentence concurrent to the one he was already serving.

*Commonwealth v. Johnson*, 985 A.2d 915, 918–19 (Pa. 2009).

On December 29, 2009, our Supreme Court affirmed Appellant's convictions and the judgment of sentence imposing the death penalty. *See id.* Appellant filed a petition for a writ of *certiorari* to the United States Supreme Court, which was denied on October 4, 2010. *Johnson v. Pennsylvania*, 562 U.S. 906 (2010).

On December 16, 2010, Appellant *pro se* timely filed a petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. The PCRA court appointed counsel. Appellant subsequently filed a motion for discovery and an amended PCRA petition and petition for a writ of *habeas corpus*. The Commonwealth conceded that Appellant was denied effective assistance of counsel during his trial for the murder of Walter Smith, and therefore the parties stipulated that Appellant was entitled to a new trial. The PCRA court entered an order to that effect on April 22, 2015.

Appellant thus began the pre-trial process on his second trial for the murder of Walter Smith.[1] On October 9, 2015, Appellant filed a motion for pre-trial discovery. The trial court held several pre-trial hearings, wherein the Commonwealth's handling of the DNA evidence from the first trial was developed further. Specifically, at his first trial, the Commonwealth presented

---

[1] On February 17, 2016, the Commonwealth withdrew its notice of intent to pursue the death penalty.

testimony and evidence that both the victim's DNA in blood stains, and Appellant's DNA in sweat stains, were found on the same red cap. This proved to be erroneous. The red cap recovered from the crime scene contained Appellant's DNA on the sweatband, but did not contain the victim's DNA. A second black cap, which the victim had been wearing at the time of the shooting, had the victim's DNA in blood stains on it, but did not contain Appellant's DNA. Though the scientific reports and property receipts clearly differentiated between the two caps, it appears that all parties involved in Appellant's first trial and appeal assumed that there was only one cap – the red cap recovered from the scene. *See, e.g., Johnson*, 985 A.2d at 918 (stating that the physical evidence included "a red baseball-type cap found at the scene that contained Appellant's DNA on the sweatband and [the victim's] DNA in blood stains on the brim"). Because the Commonwealth misread the scientific reports, it conflated the scientific findings and represented at Appellant's first trial that both Appellant's DNA and the victim's DNA were found on the same red cap.

Based on the development of this issue during the pre-trial hearings, Appellant decided to pursue a motion to bar retrial based on double jeopardy.[2] On March 3, 2016, the trial court found the Commonwealth's mistake in misrepresenting the DNA evidence at Appellant's capital trial "intolerable," but

---

[2] Though Appellant's counsel stated that he intended to file a written motion to bar retrial, no such motion appears of record. N.T., 1/27/2016, at 154-55.

ultimately denied the motion because it did not rise to intentional prosecutorial misconduct. N.T., 3/3/2016, at 36.

> It's intolerable that under our system of laws, procedure, Constitutional rights that this case went through a capital trial and verdict under these circumstances.
>
> It's absolutely intolerable from the point of view of the Commonwealth's work on the case. It's absolutely intolerable from the point of view of the defense representation in this case.
>
> And nobody on either side ought to think that any less serious a word ought to be applied to what happened here.
>
> But intolerability is not the standard of law that I am required to apply in determining what the remedy is for what happened here.
>
> The remedy of barring further prosecution is consistently described in our appellate decisions, even those decisions in which retrial is barred as the most extreme of remedies.
>
> And it is under Pennsylvania law reserved for those cases in which the record demonstrates that the Commonwealth, and most specifically, the prosecutor has engaged in a pattern of intentional misconduct so severe and so sustained that the only conclusion that can be drawn from the prosecutor's action is that the prosecutor was either attempting to cause a mistrial or attempting intentionally to deny the defendant of a fair trial and to subvert the truth-determining process.
>
> ***
>
> I do not and cannot on the basis of my view of the evidence in this case make those kinds of findings in this case.
>
> I do think, as I've said before, that what happened from the report and initial testimony of the crime scene investigator … was extremely negligent, perhaps even reckless.
>
> I don't doubt, based on all the evidence in this case, that Officer Trenwith saw something when he looked at that red cap

- 5 -

that he thought required further investigation and that may have been blood.

I am 100 percent certain, sir, that you did not see, when you first looked at that cap, what you really or reasonably thought were, quote, fresh drops of blood, unquote, because I know your work. And I know that there would have been a lot more evidence with regard to that cap and a lot more detail in the property receipt if you actually thought at the time that that's what you had seen.

But I absolutely do believe that at the time of the preliminary hearing, it's extremely possible that no one, not Officer Trenwith, certainly not Assistant District Attorney Barry, understood that there were two separate hats.

The black hat wasn't recovered at the scene. It was turned in, in a very unusual way. It was turned in later to Detective Burns.

The person from the crime lab or the DNA lab who was present at the preliminary hearing referred to blood on a hat. And I think both Officer Trenwith and Mr. Barry jumped on that at the time as evidence that what they thought may be, might possibly be the case has turned out to be the case.

There is somebody's blood, and it's the victim's blood on the brim of this hat. And there was the victim's blood on a hat. It was a different hat.

I think that that, as is often and unfortunately the case in our adversary system, led to further exaggeration of the testimony presented at trial about what was seen on the red hat. And I think it is -- it's more than negligence that by the time the case went to trial -- that first of all, in a case like this, a capital case, the case went to trial without even awaiting a full criminalistics DNA analysis.

***

I've heard the testimony of all the witnesses, particularly Mr. Barry[, the trial prosecutor]. I agree with [the Commonwealth's] position that under Pennsylvania law to turn this gross series of almost unimaginable mistakes by experienced

police officers and an experienced prosecutor into the kind of bad faith intentional misconduct that would permit a judge to bar further prosecution I would have to disbelieve completely all of Mr. Barry's testimony about what he did, what he didn't do, why he did what he did, why he didn't do what he didn't do.

On the contrary, I find his testimony to have been completely credible. I find that an experienced [] prosecutor made an almost unimaginable mistake, that it was a mistake which dovetailed with other mistakes that had been made by the officers and the detective in the case, and it produced a trial that was a farce.

The remedy in Pennsylvania for a trial that was a farce, generally, is a new trial. Prosecution, as I said, is barred under Pennsylvania law only if there are additional elements of intentional misconduct and bad faith on the part of the prosecution, which I do not find to have existed here.

N.T., 3/3/2016, at 36-41.

This timely-filed interlocutory appeal followed.[3, 4] On appeal, Appellant claims that the trial court erred in denying his motion to bar retrial because prosecutorial misconduct implicated double jeopardy. Appellant's Brief at 2.

We begin with our standard of review.

---

[3] Here, the trial court found that the motion to bar retrial was not frivolous. N.T., 3/3/2016, at 44, 46. "It is well settled in Pennsylvania that a defendant is entitled to an immediate interlocutory appeal as of right from an order denying a non-frivolous motion to dismiss on state or federal double jeopardy grounds." **Commonwealth v. Barber**, 940 A.2d 369, 376 (Pa. Super. 2007) (citations omitted).

[4] "Judge Benjamin Lerner issued the original decision and the ruling that the issue was non-frivolous. Judge Ransom took over the matter, since Judge Lerner retired soon after issuing his [o]rder. Judge Ransom then ascended to the Superior Court; thus no [1925(a)] opinion was written." Appellant's Motion, 11/14/2016, at 3 n.2.

- 7 -

An appeal grounded in double jeopardy raises a question of constitutional law. This [C]ourt's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*. To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings:

> Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Commonwealth v. Adams*, 177 A.3d 359, 370 (Pa. Super. 2017) (citations omitted).

> Article I, § 10 [of the Pennsylvania Constitution], which our Supreme Court has construed more broadly than its federal counterpart, bars retrial not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial. An error by a prosecutor does not deprive the defendant of a fair trial. However, where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied.

*Id.* at 371 (citation omitted). "Because of the compelling societal interest in prosecuting criminal defendants to conclusion, th[e Supreme] Court has recognized that dismissal of charges is an extreme sanction that should be imposed sparingly and, relevant to the question here, only in cases of blatant prosecutorial misconduct." *Commonwealth v. Burke*, 781 A.2d 1136, 1144 (Pa. 2001) (citations omitted). *See also Adams*, 177 A.3d at 373 n.28

(citation and quotation marks omitted) ("Conversely, without proof of such intent, [o]rdinarily, the dismissal of charges is a penalty far too drastic for a prosecutor's violation of discovery rules.").

The essence of Appellant's argument is that

> when an experienced homicide prosecutor and an experienced homicide detective both make the same "mistake" of not reading the central criminalistics document in a capital case; and an experienced crime scene officer lies about what he sees at the crime scene; and that lie happens to be consistent with the "mistake" made by the prosecutor and the detective; and the Commonwealth then systematically hides these lies and "mistakes" for years; and this series of lies and "mistakes" puts a man on death row for nine years, that *is* blatant and egregious prosecutorial misconduct.

Appellant's Reply Brief at 4 (emphasis in original). Thus, Appellant challenges the trial court's credibility determinations as to whether the Commonwealth committed prosecutorial misconduct.

We agree with the trial court that the Commonwealth's conduct was without question intolerable. To say that this mistake was egregious is being generous to the Commonwealth. The lack of preparation and resultant misrepresentation about the physical evidence went to the crux of one of the basic theories underpinning the Commonwealth's case against Appellant, and turned a capital trial into what the trial court aptly termed "a farce." N.T., 3/3/2016, at 41. However, the Commonwealth's conduct does not rise to the level of intentionality required to bar further prosecution. *See Adams*, 177 A.3d at 371. The trial court's finding that there was no intentional misconduct

is supported by the record. Accordingly, we affirm the denial of Appellant's motion to bar retrial.

Appellant also argues that even if the Commonwealth's conduct was not intentional, the prosecutor's conduct "[fell] so far below professional standards that double jeopardy should be implicated[.]" Appellant's Brief at 19. In other words, Appellant urges us to adopt a minimum standard of accountability for prosecutors, and if they fall below that benchmark, the Commonwealth should be barred from retrying a defendant. Appellant's Brief at 20-25. In support of his argument, Appellant cites several Pennsylvania and out-of-state cases that he claims all deliver the same message: "prosecutors cannot set aside fairness in the search for a conviction and then expect courts to permit a do-over." Appellant's Brief at 24.

Here, the Commonwealth did not set aside fairness in search of a conviction. Rather, the Commonwealth committed serious mistakes in its trial preparation, but mistakes, nonetheless. These mistakes did not "change[] from mere error to intentionally subverting the court process[.]" *Adams*, 177 A.3d at 371. While Appellant seeks to hold prosecutors to a minimum standard of accountability before permitting retrial, that is not the test we must apply for claims involving double jeopardy. *See id.* (holding that retrial will be barred under double jeopardy where "prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, [or] when the conduct of the prosecutor is intentionally undertaken to prejudice the

defendant to the point of the denial of a fair trial"). We cannot ignore existing precedent and create a new test.

Accordingly, because the Commonwealth's deliberate indifference fell below the requisite level of intentionality, we affirm the trial court's order denying Appellant's motion to bar retrial.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 6/27/18