J-A13016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BRYAN HILL, :
:
Appellant : No. 773 WDA 2017

Appeal from the Judgment of Sentence December 20, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No.: CP-02-CR-0007301-2016

BEFORE: OLSON, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.: **FILED FEBRUARY 22, 2019**

Appellant, Bryan Hill, appeals from the Judgment of Sentence entered by the Allegheny County Court of Common Pleas after his conviction following a bench trial of two misdemeanor counts of Driving Under the Influence ("DUI") and one summary count of Reckless Driving.[1] We affirm.

The trial court set forth the relevant facts in detail in its December 6, 2017 Opinion, which we summarize as follows. In the early morning hours of April 22, 2015, Sergeant Joseph Blaze and several other Penn Hills police officers were investigating a report of shots fired, driving through the area near Frankstown Road and Robinson Boulevard in an attempt to locate the shooter. As Sergeant Blaze proceeded through the intersection with a green light, he heard tires squealing and saw Appellant to his left driving a dark gray

_____

[1] 75 Pa.C.S. § 3802 and 75 Pa.C.S. § 3736, respectively.

vehicle and speeding directly at him. Appellant's vehicle entered the intersection in an uncontrolled skid, with the back wheels locked and smoke coming from the back tires. The police car made it through the intersection with Appellant's vehicle nearly hitting it. Sergeant Blaze immediately turned his vehicle around and pursued Appellant. Other officers joined in the pursuit.

Sergeant Blaze and Officer Dustin Hess followed Appellant's vehicle to a residential driveway. By the time they arrived, Appellant was walking away from the vehicle toward the front door of the residence. The officers observed that he "appeared to be highly intoxicated, smelled strongly of alcohol, had difficulty with balance[,] and had urinated in his pants." Trial Court Opinion, filed 12/6/17, at 4.

Officer Hess ordered Appellant to stop so they could speak to him, but Appellant ignored them and started pounding on the front door. Appellant then stated, "I didn't almost hit you," "I wasn't going too fast," and "I made it home, you guys can't stop me." *Id.* at 5.

Because Appellant's vehicle was listed as stolen in the police department's system, the officers placed Appellant in handcuffs during their brief investigation.[2] Appellant could not complete field sobriety testing due to his inebriated condition and lack of cooperation. The officers, thus, drove Appellant to the police station for chemical testing.

_____

[2] The officers eventually determined the stolen status was inaccurate because an old report should have been cleared.

At the police station, Appellant refused to take a breath test and "continued to be loud, boisterous, belligerent, and uncooperative." *Id.* The officers released Appellant to his mother at 4:30 A.M. Shortly thereafter, Appellant returned to the police station lobby and refused to leave until his mother gave him his car keys. Appellant's mother refused given his condition, and Appellant remained at the police station until his grandmother picked him up at 5:50 A.M.

The Commonwealth charged Appellant with two misdemeanor counts of DUI, Reckless Driving, Failure to Stop at Red Signal, and Driving Vehicle at Safe Speed.[3] At his August 1, 2016 formal arraignment, Appellant received a packet of relevant documents, including the Criminal Information. The court scheduled trial for October 7, 2016.

On September 23, 2016, Appellant filed a Motion to Suppress his statements to police. On October 3, 2016, Appellant filed a boilerplate Motion for Discovery for the upcoming October 7th trial, requesting, among other things, "any video and/or audio recording from any police vehicles involved in the instant case." Motion for Discovery, 10/3/16, at 2. On October 11, 2016, the trial court granted Appellant's Motion, listing each of the items requested in its Order, and in a handwritten notation directing the Commonwealth to

---

[3] 75 Pa.C.S. § 3802; 75 Pa.C.S. § 3736; 75 Pa.C.S. § 3112(a)(3); and 75 Pa.C.S. § 3361, respectively.

provide defense counsel with any discovery not given to Appellant in his packet at his formal arraignment.

On October 14, 2016, the rescheduled trial date, Appellant moved to dismiss the charges because the Commonwealth purportedly had failed to turn over dashboard camera footage of the incident. After the Commonwealth asserted that no video existed, the trial court briefly questioned Sergeant Blaze and another officer who had participated in the car chase. The officers informed the court that their in-car camera systems record video, which the system automatically purges after 90 days. N.T., 10/14/16, at 5-6. The officers stated that they did not preserve any video from the April 2015 incident because: (1) they had not conducted a traditional DUI stop; (2) there was no relevant footage based on the location of the police cars in relation to Appellant's vehicle; and (3) they had not received any requests to preserve the video footage. *Id.* at 5-7.

The trial court denied Appellant's Motion to Dismiss and proceeded directly to a hearing on Appellant's Motion to Suppress. The court denied the Motion to Suppress and held an immediate bench trial. At the conclusion of the trial, the court found Appellant guilty of two counts of DUI and Reckless Driving.

On December 13, 2016, the trial court imposed an aggregate sentence of three to six days' incarceration, followed by six months' probation.

Appellant filed a timely Post-Sentence Motion, which the trial court denied on April 27, 2017.

Appellant filed a timely Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue for our review:

Whether the trial court abused its discretion in denying [Appellant's] request for dismissal relating to the Commonwealth's intentional misconduct in destroying video evidence?

Appellant's Brief at 9.[4]

Appellant alleges that the Commonwealth denied him due process of law when it failed to produce dashboard camera video as ordered, and the trial court, thus, "committed an abuse of discretion in not dismissing [Appellant's] case." Appellant's Brief at 16. He also contends that the Commonwealth's "intentional disregard for potentially useful evidence to [Appellant] constituted blatant and egregious misconduct." Appellant's Brief at 19.

An allegation of a due process violation presents a pure question of law; thus, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Kearns*, 70 A.3d 881, 884 (Pa. Super. 2013). To the extent that the trial court's factual findings impacted its denial of Appellant's

_____

[4] In his Reply Brief, Appellant clarified that he is **not** presenting a claim under *Brady v. Maryland*, 373 U.S. 83 (1963) (holding that it is a violation of a defendant's right to due process to withhold evidence that is favorable to the defense and material to the defendant's guilt or punishment). *See* Reply Brief at 1-2.

Motion for Dismissal, "we apply a more deferential standard of review to those findings." *Id*. Further, the weight to be accorded the evidence "is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record." *Id*. (citations omitted).

The dismissal of charges "is an extreme sanction that should be imposed sparingly and … only in cases of blatant prosecutorial misconduct." *Commonwealth v. Burke*, 781 A.2d 1136, 1144 (Pa. 2001).

> A dismissal punishes not only the prosecutor, but also the public at large because "the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law." *Commonwealth v. Shaffer*, 551 Pa. 622, 712 A.2d 749, 753 (1998). Therefore, a trial court should consider dismissal of charges only where the actions of the Commonwealth are egregious and where demonstrable prejudice will be suffered by the defendant if the charges are not dismissed. *Id*.

*Commonwealth v. Goldman*, 70 A.3d 874, 881 (Pa. Super. 2013).

Pre-trial discovery in criminal cases is governed by Pennsylvania Rule of Criminal Procedure 573. The Rule lists certain items and information that are subject to mandatory disclosure by the Commonwealth when they are: (1) requested by the defendant, (2) material to the case, and (3) within the possession or control of the prosecutor. *See* Pa.R.Crim.P. 573(B)(1). The Rule also lists information and evidence subject to discretionary disclosure when the request is reasonable. *See* Pa.R.Crim.P. 573(B)(2).

Decisions involving discovery matters are within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion.

*Commonwealth v. Smith*, 955 A.2d 391, 394 (Pa. Super. 2008) (*en banc*).

"An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Antidormi*, 84 A.3d 736, 749-50 (Pa. Super. 2014) (citations omitted).

When raising a due process claim that the Commonwealth failed to preserve "potentially useful" evidence, as opposed to a claim of a *Brady* violation, a defendant must show "bad faith on the part of the police." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).[5] *See also Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004) (discussing case law and distinguishing between situations involving "potentially useful" evidence from those involving "material exculpatory evidence"); *Commonwealth v. Coon*, 26 A.3d 1159, 1162 n.2 (Pa. Super. 2011) (analyzing a due process claim in connection with lost evidence, and adopting the "bad faith" standard applicable to "potentially useful," but not materially exculpatory, evidence as acceptable under the both the United States and Pennsylvania Constitutions).

The United States Supreme Court has made clear that bad faith requires more than negligence. *Youngblood*, *supra* at 58. A determination of bad faith is a credibility determination, and we are bound by a trial court's finding

---

[5] These claims are distinct from similar *Brady* claims challenging the failure to produce or disclose "material exculpatory" evidence.

that the Commonwealth did not act in bad faith if that finding is supported by the record. ***See***, ***e.g.***, ***Commonwealth v. Snyder***, 963 A.2d 396, 406 (Pa. 2009) (stating that "it is very unlikely we could find bad faith where samples are destroyed pursuant to standard procedure[.]").

Because the requested video evidence was only "potentially useful" in this case, Appellant needed to show that the Commonwealth acted in bad faith in failing to produce the dashboard camera video. ***Youngblood***, ***supra*** at 58. Here, the trial court concluded that the potentially useful "video would not have been captured under these circumstances and that no video of the incident existed[.]" ***See*** Trial Court Opinion, filed 12/6/17, at 9-10. The court observed, after listening to the testimony of the police officers, that the dashboard cameras would not have recorded relevant footage because of the location of the police cars relative to Appellant's vehicle before, during, and after the pursuit. The court also noted that Appellant had not submitted a request to preserve the video footage within the 90-day window before the system automatically purged the footage in question pursuant to police policy.[6] Importantly, the trial court did not find that the Commonwealth acted negligently or in bad faith.[7]

---

[6] ***See*** N.T., 10/14/16, at 6-7.

[7] We acknowledge that the trial court did not specifically state that the Commonwealth did not act in bad faith, but its Opinion makes clear it considered the facts and the officers' testimony to reach its conclusion that the Commonwealth did not act improperly.

Our review of the record supports the trial court's factual findings and credibility determinations. Because the evidence was merely "potentially useful," and Appellant failed to prove that the Commonwealth acted in bad faith or otherwise "egregiously," we conclude the trial court did not err in denying Appellant's Motion to Dismiss. **Shaffer**, 712 A.2d at 753. Appellant's arguments to the contrary are unavailing and he is not entitled to relief.[8]

Based on the foregoing, we affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2019

---

[8] Appellant includes extensive discussion in his Brief regarding the impropriety of allowing police officers to purge dashboard camera video after 90 days based on their "unilateral decision that the video was not relevant or useful to the prosecution of [Appellant.]" Appellant's Brief at 21-25. Appellant's argument fundamentally implicates police policy, a topic we decline to address under the facts presented here, and which is more appropriately a topic for the legislature's consideration.