J-A12001-17

2017 PA Super 413

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JORDAN TIMOTHY ADAMS | |
| Appellant | No. 813 WDA 2016 |

Appeal from the Order Dated May 5, 2016
In the Court of Common Pleas of Warren County
Criminal Division at No(s): CP-62-CR-000173-2015

BEFORE:   OLSON, J., SOLANO, J., and RANSOM, J.

DISSENTING OPINION BY RANSOM, J.:          FILED DECEMBER 27, 2017

I respectfully dissent.   In my view, the Majority opinion places insufficient weight on the police officer's admitted practice of entering video recordings into evidence only if they include inculpatory statements.

This is an appeal from an order denying Appellant's motion to dismiss all charges on double jeopardy grounds.   Appellant's initial prosecution resulted in a mistrial after it was revealed that the Commonwealth had failed to disclose exculpatory videotaped interviews with Appellant's co-conspirator. Although the trial court found three instances of prosecutorial conduct related to the withholding of said tapes, it nevertheless determined that Appellant was not entitled to dismissal of his charges.

With regard to the examination of double jeopardy claims, the Majority recognizes that:

The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, § 10 of the Pennsylvania Constitution protect a defendant from repeated criminal prosecutions for the same offense. Ordinarily, the law permits retrial when the defendant successfully moves for mistrial. If, however, the prosecution engages in certain forms of intentional misconduct, the Double Jeopardy Clause bars retrial. Article I, § 10, which our Supreme Court has construed more broadly than its federal counterpart, bars retrial not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial. An error by a prosecutor does not deprive the defendant of a fair trial. However, where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied.

Graham, 109 A.3d at 736 (internal citations and quotations omitted). Thus, the operative determination is whether the Commonwealth intended to deprive the defendant of a fair trial.

Here, the trial court found three instances of prosecutorial misconduct in the form of Brady[1] violations but determined that the prosecutor had not intentionally committed misconduct. Rather, the court found the prosecutor grossly negligent in his assumptions and unwilling to accept responsibility for his mistakes. See Trial Court Opinion (TCO), 7/5/16, at 4-9. The trial court also examined the conduct of the police. In so doing, the trial court found:

This practice of putting a DVD into the file only when there is inculpatory evidence is concerning. The [Pennsylvania State Police] regulations require that the original of all recorded polygraph interviews by placed in the investigating officer's case file. Zeybel's contrary practice functionally placed an extra hurdle to the disclosure of exculpatory interviews through discovery.

_____

[1] Brady v. Maryland, 83 S. Ct. 1194 (1963).

TCO at 7.

Pennsylvania courts have previously held that the Commonwealth's Brady obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution. See Commonwealth v. Burke, 781 A.2d 1136, 1142 (Pa. 2001); see also Commonwealth v. Sullivan, 820 A.2d 795, 802 (Pa. Super. 2003) (noting that the prosecution's duty to disclose favorable evidence extends to others acting on the government's behalf, including the police).

Indeed, the Majority recognizes as much. See Maj. Op. at 25-26 (finding no reason to foreclose the possibility that intentional misconduct by the police should also warrant dismissal under a double jeopardy analysis). The Majority recognizes that police violate a defendant's due process rights where they destroy exculpatory evidence regardless of intention or when they destroy potentially useful evidence in bad faith. See Commonwealth v. Snyder, 963 A.2d 396, 406 (Pa. 2009). Nevertheless, the Majority accepts the trial court's finding that the officers acted unintentionally in not including the video of Redding and notes that miscommunication between the police and prosecutor alone cannot be the basis for misconduct. See Maj. Op. at 28-29 (citing Burke, 781 A.2d at 1145-46).

However, I cannot agree with the weight the Majority places upon Corporal Zeybel's admission that it is his longstanding practice to act in open contravention of police regulations. Here, Corporal Zeybel testified that he only entered a recorded statement into case evidence if it had "evidentiary

value." Corporal Zeybel assigned "value" only to those recordings that contained an inculpatory statement, i.e., a confession. See Notes of Testimony (N.T.), 5/5/16, at 86-87. Corporal Zeybel also admitted he was mistaken for failing to comply with police regulations requiring him to do so. Since Appellant's mistrial, Corporal Zeybel has begun to include information regarding recordings in his report, but persists in omitting recordings from case evidence unless they include a confession or are specifically requested, despite Pennsylvania State Police regulations requiring all recorded polygraph interviews to be put in the officer's case file. See N.T., 5/5/16, at 86-87, 101; Maj. Op. at 12; Appellant's Ex. 1 to Hr'g on Appellant's Mot. to Dismiss, at 13.

Despite the mistrial, Corporal Zeybel does not proffer potentially exculpatory evidence obtained from polygraphs, and it is unclear whether he understands the definition of exculpatory evidence. Id. at 87, 101. For example, he also testified that until the trial he did not realize his interview with Appellant's co-defendant was considered "part of" Appellant's case. See N.T., 5/5/16, at 77.

While the Majority notes concern with Corporal Zeybel's admitted practice that he only enters inculpatory and not exculpatory statements into evidence, it accepts at face value that he does so in order that the recordings will not become a "thorn" in the side of police and not to deprive defendants of a fair trial. See Maj. Op. at 29. I cannot see any way in which this practice, in contravention of Brady and the regulations of the State Police themselves, does not intentionally deprive a defendant from receiving a fair trial.

We have previously noted that

> [i]ntentional prosecutorial misconduct . . . raises systematic concerns beyond a specific individual's right to a fair trial that are left unaddressed by retrial. As this Court has often repeated, a fair trial is not simply a lofty goal, it is a constitutional mandate, . . . [and] [w]here that constitutional mandate is ignored by the Commonwealth, we cannot simply turn a blind eye and give the Commonwealth another opportunity.

Commonwealth v. Kearns, 70 A.3d 881, 884–85 (Pa. Super. 2013) (internal citations and quotations omitted). I cannot agree with the Majority's trust that "measures have been taken" to guarantee that complete discovery is disclosed to criminal defendants in all future cases, as the conduct testified to here raises systematic concerns beyond merely Appellant's right to a fair trial, and testimony indicates that the concerns may be ongoing.

Accordingly, I would find that the police in the instant matter intentionally subverted the court process, and would reverse the trial court. See Graham, 109 A.3d at 736.