J-S31004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| VANCE LEON HASKELL | : | |
| | : | |
| Appellant | : | No. 952 WDA 2018 |

Appeal from the Order Entered June 21, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000731-1998

BEFORE:  OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 13, 2019**

Appellant, Vance Leon Haskell, appeals from the order entered on June 21, 2018, which denied his Motion to Dismiss Prosecution on Grounds of Double Jeopardy.  We affirm.

In 1998, Appellant was convicted in the Erie County Court of Common Pleas of a number of crimes, including first-degree murder; he was sentenced to serve a term of life in prison.  On August 1, 2017, the United States Court of Appeals for the Third Circuit granted Appellant's *habeas corpus* petition, thus resulting in the vacation of Appellant's judgment of sentence.  ***See Haskell v. Superintendent Greene SCI***, 866 F.3d 139 (3rd Cir. 2017).  In granting Appellant's *habeas* petition, the Third Circuit ruled:

> [During Appellant's trial, an eyewitness named Antoinette Blue (hereinafter "Blue")] [] provide[d] consistent testimony claiming she could identify [Appellant as the] shooter.  What's more, she claimed to expect nothing in return from the

Commonwealth in exchange for her testimony. But this last claim was untrue. Both Blue and the prosecutor knew that she expected to receive help in her own pending criminal matters in exchange for her testimony. The prosecutor failed to correct Blue's statement; he even went on to rely on it and vouch for Blue in his closing argument.

***Id.*** at 140.

The Third Circuit held that the prosecutor committed misconduct and that Appellant was entitled to *habeas* relief because the prosecutor "knew Blue's testimony was false and failed to correct it" and there was "a reasonable likelihood that Blue's false testimony could have affected the judgment of the jury." ***Id.*** at 146 and 152.

The Commonwealth elected to retry Appellant and the trial court initially scheduled jury selection for March 16, 2018. ***See*** Trial Court Order, 2/14/18, at 1. Prior to trial, however, Appellant filed a Motion to Dismiss Prosecution on Grounds of Double Jeopardy (hereinafter "Double Jeopardy Motion"), where Appellant claimed that the trial court should dismiss all charges against him, as the double jeopardy clauses of the United States and Pennsylvania Constitutions prevent the Commonwealth from retrying him on the charges. ***See*** Appellant's Double Jeopardy Motion, 3/12/18, at ¶¶ 1-31.

On May 25, 2018, the trial court heard argument on Appellant's Double Jeopardy Motion and, on June 21, 2018, the trial court denied the motion.[1]

_____

[1] The trial court expressly concluded that Appellant's Double Jeopardy Motion was not frivolous. Trial Court Supplemental Opinion, 7/18/19, at 7. Therefore, the trial court's June 21, 2018 order, which denied Appellant's motion to dismiss on double jeopardy grounds, is appealable as a collateral

Trial Court Order, 6/21/18, at 1-2. As the trial court explained, it denied Appellant's motion because it found, as a fact, that the prosecutor did not "engage[] in pervasive, incessant, or outrageous conduct [and he did not] intentionally undert[ake] to prejudice [Appellant] to the point of denying him a fair trial."[2] Trial Court Opinion, 8/30/18, at 27-28; *see also Commonwealth v. Smith*, 615 A.2d 321, 325 (Pa. 1992) (holding that the double jeopardy clause of the Pennsylvania Constitution "prohibits retrial of a defendant . . . when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant and thereby deny him a fair trial"); *Commonwealth v. Chmiel*, 777 A.2d 459, 464 (Pa. Super. 2001) ("*Smith* did not create a *per se* bar to retrial in all cases of intentional prosecutorial overreaching. Rather, the *Smith* Court primarily was concerned with

_____

order. Pa.R.A.P. 313; Pa.R.A.P. 313 note ("[e]xamples of collateral orders include orders denying pre-trial motions to dismiss based on double jeopardy in which the court does not find the motion frivolous"); Pa.R.Crim.P. 587(B).

[2] As the trial court explained, during discovery, the prosecutor "fully disclosed to defense counsel [] the exact parameters of the Commonwealth's effort to effect leniency for [Blue on her pending criminal charges and] . . . Blue's criminal history." Trial Court Opinion, 8/30/18, at 27. Thus, the trial court held:

> The failure to correct Blue's inaccurate testimony about expectations for leniency in [her pending criminal charges] . . . while certainly of significant concern, does not, in the absence of other evidence, rise to the level of the kind of pervasive intentional misconduct from which an intention to deprive [Appellant] of his right to a fair trial can be [found].

*Id.*

- 3 -

prosecution tactics, which actually were designed to demean or subvert the truth seeking process. The **Smith** standard precludes retrial where the prosecutor's conduct evidences intent to so prejudice the defendant as to deny him a fair trial") (quotations and citations omitted); **Commonwealth v. Basemore**, 875 A.2d 350, 356 (Pa. Super. 2005) (holding that "grossly negligent or reckless conduct by a prosecutor" does not implicate double jeopardy concerns).

On July 2, 2018, Appellant filed a notice of appeal from the June 21, 2018 order. Appellant raises one claim on appeal:

> Whether the trial court erred in denying [Appellant's] motion to dismiss based upon grounds of double jeopardy, when [Appellant's] conviction was vacated when the Third Circuit Court of Appeals granted [Appellant's] habeas petition on the grounds of intentional prosecutorial misconduct, and the prosecution knowingly used perjured testimony at trial[?]

Appellant's Brief at 4.

We have reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the opinions of the able trial court judge, the Honorable John A. Bozza. We conclude that Appellant is not entitled to relief in this case and that Judge Bozza's August 30, 2018 and July 18, 2019 opinions meticulously and accurately dispose of Appellant's issues on appeal. Therefore, we affirm on the basis of Judge Bozza's thorough opinions and adopt them as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Bozza's August 30, 2018 and July 18, 2019 opinions.

- 4 -

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/13/2019

COMMONWEALTH OF PENNSYLVANIA  :  IN THE COURT OF COMMON PLEAS

OF ERIE COUNTY, PENNSYLVANIA

V.  :  CRIMINAL DIVISION

VANCE HASKELL,  :  NO. 731-1998

Defendant  :

## SUPPLEMENTAL 1925 (a) OPINION

Bozza, John A., S.J.,

Pursuant to the Superior Court's directive and in compliance with the requirements of Pennsylvania Rule of Criminal Procedure 587(B), this Court sets forth below Findings of Fact and Conclusions of Law regarding its denial of the Defendant's Motion to Dismiss Prosecution on Grounds of Double Jeopardy and specifically finds that the Motion was not frivolous.

**Findings of Fact**

1. At approximately 1:27 a.m. on December 10, 1994, Darrell Cooley was shot nine to eleven times by an Uzi-type gun at close range at an eastside Erie bar, Jethroe's Steakhouse. Cooley died of his wounds.
2. Although the bar held over 100 patrons, few witnesses came forth to identify the shooter.
3. After a lengthy investigation, Vance Haskell was charged with murder of Darrell Cooley.
4. At the conclusion of the trial, Vance Haskell was found guilty of first-degree murder, possessing instrument of crime, aggravated assault, and reckless endangerment.
5. On November 10, 1998, he was sentenced to a term of life imprisonment. He took a direct appeal.
6. The Pennsylvania Superior Court affirmed his judgment of sentence on August 23, 1999.
7. The Defendant filed several PCRA petitions, all of which were denied at the trial level *and* on appeal. Haskell's third PCRA Petition, filed on April 30, 2012, raised the same issue of prosecutorial misconduct that is now before the court.
8. On May 1, 2012, the trial court denied PCRA relief since the petition was untimely.

1

9. Haskell then filed a petition for habeas corpus relief with the United States District Court for the Western District of Pennsylvania. United States Magistrate Judge, Susan Paradise Baxter, denied Haskell's habeas petition.

10. The Third Circuit Court of Appeals reversed the Western District Court and granted Haskell's habeas petition.

11. The Third Circuit found that witness Antoinette Blue provided perjured testimony which the District Attorney failed to correct, and also found that her testimony could have affected the judgment of the jury. *Haskell*, 866 F.3d 139, 150, 152.

12. Specifically, the Third Circuit found that: (1) Blue lied about her criminal record and about whether she hoped to benefit in her own pending criminal proceedings in exchange for testifying, and (2) District Attorney Hayes failed to correct that lie and, in fact, bolstered it in his closing statement.

13. Haskell is currently awaiting re-trial before the Erie County Court of Common Pleas.

14. On March 12, 2018, he filed a Motion to Dismiss Prosecution on Grounds of Double Jeopardy based on the Third Circuit's finding of prosecutorial misconduct during his jury trial.

15. This Court denied Haskell's motion because of the legal standards that: (1) neither negligent nor reckless prosecutorial misconduct, by themselves, implicate double jeopardy concerns, *Commonwealth v. Basemore*, 875 A.2d 350, 356 (Pa. super. 2005) and (2) the record did not support a finding of pervasive, incessant, or outrageous conduct on the part of the prosecution as per *Basemore (Id.* p. 354, *see* also *State v. Breit*, 930 P.2d 792, 804 (NMSC 1996).

16. The trial court record has not been supplemented by additional testimony or other evidence concerning the conduct of the prosecution during the course of the criminal proceedings.

17. At trial the prosecution presented four witnesses that, to varying degrees, identified Haskell as the perpetrator and two more that placed Haskell with the same type of murder weapon at different times prior to the shooting.

18. Roseanna Wayne, testified she was in the bar approximately ten feet away from the shooter. She identified Haskell in court as someone who "look[ed] like" the shooter. However, she also testified that she was not sure she could make a valid identification. (Trial Transcript, September 28, 1998, Day 2, pp. 58-59.)

19. Dorthea Roberts was also a patron of the bar that day. She testified at trial that she was within feet of the shooter. (Tr. Day 2, p. 178). She recalled hearing approximately 12 shots. (Tr., Day 2, p. 183). In the courtroom, Roberts identified Vance Haskell as the shooter. (Tr., Day 2, p. 184).

20. Robert's credibility was challenged on cross examination when it was shown that she told police shortly after the shooting that she did not know who the shooter was. (Tr., Day 2, p. 189-190). She also admitted that she was in jail awaiting trial on simple assault charges. (Tr., Day 2, p. 193).

2

21. Curtis Mathis provided a video-taped statement to police on March 7, 1997, identifying Haskell as the shooter.

22. Mathis had smoked marijuana in Jethroe's parking lot with Haskell and witness, Antoinette Blue, shortly before the shooting. (Tr. Day 3, p. 93-107).

23. Although at trial Mathis recanted his prior identification of Haskell, the prosecution was able to play his video-taped statement for the jury. (Tr. Day 3, p.94).

24. Another witness, Darrell Gamble, testified that he saw Haskell and Mathis run out the back of the bar after the shooting. (Tr. Day 3, p. 125). However, his credibility was compromised during cross examination when he admitted he had formerly identified another person as having run out the back door, rather than Haskell. (Tr. Day 3, p. 134).

25. Nicole Thompson testified that she had seen Haskell at a residence four days before the shooting at Jethroe's. Haskell had had a gun similar to the weapon proffered at trial as the murder weapon. (Tr. Day 3, p. 155-157). Kenneth Henderson also testified that he had seen Haskell with the subject firearm on several occasions prior to the shooting. (Tr. Day 4, pp. 20-25).

26. Antoinette Blue was also a key witness. It is her testimony that was the primary focus of the habeas claim and the central issue here.

27. She testified that she had met Haskell approximately two weeks before the shooting. (Tr. Day 2, p. 216). On the night of the incident, she was smoking a marijuana "blunt" with him and others in the bar parking lot. (Tr. Day 2, p. 215-216). She testified that Haskell came into the bar sometime after she did. He then pulled out a gun and started shooting. (Tr. Day 2, p. 205).

28. Blue did not identify Haskell as the shooter until three years later when she was in Erie County jail. (Tr. Day 2, p. 227).

29. At trial, John Moore, the Defendant's attorney attempted to challenge Blue's credibility on the basis of her prior theft convictions and her interest in receiving favorable treatment from the prosecution in exchange for her cooperation.

30. At the time of trial, Blue had been convicted of one theft related offense, a Criminal Attempt charge from 1997. Her thirty month probation sentence on that charge had not begun to run. She also had an ARD disposition for Retail theft in 1994, for which she appears to have completed a probationary period in 1995.

31. According to court documents, at the time of trial she was on parole for disorderly conduct and resisting arrest to be followed by a probation sentence for the criminal attempt conviction.

32. In addition she had pending retail theft and related charges in Mercer County from which she was released on bail posted by a professional bondsman.

33. She testified that she got in contact with an Erie County detective earlier that year when she was in jail on disorderly conduct charges and offered to help in their investigation of Defendant. Cross examination revealed that Blue was sent from the Erie County Prison

3

to a rehabilitation program and then was paroled several months before the Haskell trial. She noted that she had been in jail before.

34. Her testimony did not provide a complete picture of either her prior criminal history or her interest in receiving favorable treatment on pending charges as a result of her cooperation with the prosecution. She testified that she was on probation and had previously been convicted of theft a long time ago and was on probation for retail theft "...back in the day". (Trial Tr. Day 2, p. 226).

35. She did not mention that she had been in jail in Erie County on a detainer warrant for a parole violation and a bench warrant for failure to appear at sentencing in another case in Erie County.

36. Blue adamantly denied expecting to get out of jail or expecting to "get something" out of testifying. (Tr. Day 2, p. 227, 231).

37. It is apparent from the record of the trial that the relevant examination of Ms. Blue's testimony was not presented in a methodical and coherent manner.

38. Ms. Blue's answers were often not clear and precise.

39. The factual setting regarding Blue's prior record, her expectation of leniency and the prosecutor's response are as follows:

    a. **January 10, 1994** Blue Sentenced on Retail Theft (Erie County Docket #1510-1993)
   - Blue is accepted into the ARD program (no guilty plea).
   - Probation for 12 months.

    b. **November 15, 1996** Sentenced on Disorderly Conduct and Resisting Arrest (Erie County Docket #733-1996)
   - Disorderly Conduct Sentence: 1 to 11 months' incarceration.
   - Resisting Arrest Sentence: 2 years' probation, consecutive to above.

    c. **July 3, 1996** Charged with Four Theft Related Counts (#1514-1996).

    d. **December 9, 1996** Paroled on disorderly conduct charge (#733-1996).

    e. **January 8, 1997** Enters a Negotiated Guilty Plea to Count I (out of four counts), Criminal Attempt (theft) (#1514-1996).

    f. **February 18, 1997** Blue Fails to Appear for Sentencing (#1514-1996).

    g. **February 21, 1997** Bench Warrant Issued for Failure to Appear at Sentencing (#1514-1996).

    h. **March 7, 1997** Non-Omittas (Probation/Parole Absconder) Warrant Issued (#733-1996).

    i. **February 9, 1998** Blue Arrested in Mercer County on Retail Theft based charges after a shoplifting spree (Mercer County Docket #334-1998).

4

j. **February 19, 1998** Bond Posted by Professional Bondsman on Mercer County charges.

k. **February __, 1998** Blue Transported to Erie County Jail Per Outstanding Bench Warrant (#1514-1996) and Non-Omittas Warrant for violation of her parole and probation for disorderly conduct and resisting arrest (#733-1996)

l. **February – March 1998** While in Erie County Jail on Erie Warrants, Blue contacts Erie Police Department to let them know she could identify person who shot Cooley

m. **March 18, 1998** Blue testifies against Haskell at Preliminary Hearing. Cross examined by Haskell's attorney for the first time.

n. **March 20, 1998** Blue's parole and probation at #733-1996 Revoked (Disorderly Conduct and Resisting Arrest).
   - Resentenced on Disorderly Conduct: 1-11 months' incarceration
   - Resentenced on Resisting Arrest: 3-12 months' Erie County Jail, concurrent.

o. **March 20, 1998** Sentenced on Criminal Attempt (theft) # 1514-1996 (based on plea one year ago prior to absconding) to 30 months' probation, consecutive to #733-1996.

p. **March __, 1998 - June 15, 1998** Blue Sent to White Deer Run Rehabilitation Program (#733-1996).

q. **March 31, 1998** Attorney McConnell assigned as Blue's counsel in Mercer County.

r. **April 22, 1998** Blue's Mercer counsel, Attorney McConnell, sends note to Mercer County D.A. Jim Epstein, Esq., noting that Detective Skindell had reported to Mercer County D.A.s office that Blue was helping them in the Haskell prosecution. Complains that Mercer County ADA Farrone "is not willing to offer her [Blue] anything less than pleas to single counts of retail theft, unsworn falsification and I believe receiving stolen property." He notes this was the same plea offered Blue at Blue's Preliminary Hearing, prior to her testimony in the Haskell case.

s. **April 30, 1998** Hayes sends Discovery Letter Sent to Attorney Moore (Haskell's Attorney) describing Blue's Mercer charges and the prosecution's efforts to assist Blue in Mercer by making the Mercer sentencing judge aware of her cooperation. Also provided copy of Blue's criminal record.

t. **May 27, 1998** Suppression Hearing.

u. **June 15, 1998** Order of Parole (Erie County #733-1996, Disorderly Conduct).

v. **September 1998** Blue Testifies for Prosecution in Haskell Trial.

5

w. **November 3, 1998** Blue Enters Guilty Plea to Two of Mercer County Charges (Mercer #334-1998):
- Retail Theft.
- Unsworn Falsification.

x. **December 9, 1998** Erie County D.A. Hayes writes to Mercer County and advises sentencing Judge of Blue's cooperation. Also notes he did not previously promise Blue any assistance, except to write this letter. Unknown when Hayes told Blue he would write the letter.

y. **December 9, 1998** Blue Sentenced to Retail Theft and Unsworn Falsification, 1-4 years' incarceration, sentence suspended. Probation for 18 months, consecutive to existing sentences, plus costs.

**Conclusions of Law**

40. The double jeopardy clause of the Pennsylvania Constitution prohibits re-trial of a defendant when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial. *Commonwealth v. Smith*, 615 A. 2d 321, 325 (Pa. 1992).

41. Negligent or reckless prosecutorial misconduct does not implicate double jeopardy concerns. *Commonwealth v. Basemore*, 875 A.2d 350, 356 (Pa. super. 2005).

42. Double jeopardy bars retrial of the defendant where the prosecutor engages in "pervasive, incessant, and outrageous" conduct. *Basemore*, 875 A.2d at 354. *See* State v. Breit, 930 P.2d 792, 804 (NMSC 1996).

43. In order to raise double jeopardy implications, prosecutorial misconduct must be deliberate, undertaken in bad faith, and with a specific intent to deny the defendant a fair trial.

44. The remedy of discharge without a fair and complete fact-finding procedure "is extreme and will not be invoked absent deliberate bad faith prosecutorial misconduct." *Commonwealth v. Santiago*, 654 A.2d 1062, 1085 (Pa. Super. 1994).

45. The applicable standard for the grant of a federal habeas corpus petition, as found by the Third Circuit in *Haskell*, is a determination that the state had knowingly presented or knowingly failed to correct perjured testimony which results in a reasonable likelihood that the perjured testimony affected the judgment of the jury. *Haskell*, 866 F.3d at 152.

46. This standard differs from the standard for the grant of a double jeopardy petition, which requires a determination not only that there was perjured testimony which may have affected the jury, but also that the prosecutorial misconduct was deliberate, undertaken in bad faith and with a specific intent to deny the defendant a fair trial. *Strong*, 825 A.2d at 669-670. The conduct of prosecution must also be pervasive, incessant, or outrageous (see above). Thus, there is a significantly higher bar for the grant of a double jeopardy motion.

6

47. Upon a review of the facts, we do not find that prosecutor Hayes engaged in pervasive, incessant, or outrageous conduct, nor do we find that he intentionally undertook to prejudice the defendant to the point of denying him a fair trial.
48. However, this Court does not consider the Motion of the Defendant to Dismiss Prosecution on Grounds of Double Jeopardy to have been frivolous, as the prosecution should have corrected the false testimony of Prosecution witness Antoinette Blue.

This Court's legal analysis and conclusions are more fully set forth in its original 1925(a) Opinion.

BY THE COURT:

SENIOR JUDGE

_____
John A. Bozza, Senior Judge

July _18_, 2019

cc: District Attorney's Office

Alison M. Scarpitti, Esq.
150 E 8TH St Ste C
Erie, PA 16501-1270

COMMONWEALTH OF PENNSYLVANIA  :  IN THE COURT OF COMMON PLEAS
              :  OF ERIE COUNTY, PENNSYLVANIA
     V.       :  CRIMINAL DIVISION
              :
VANCE HASKELL,      :  NO. 731-1998
  Defendant

Bozza, John A., S.J., August 30, 2018

## 1925 (a) OPINION

Appellant filed a Notice of Appeal, as of right, from this Court's June 21, 2018 Order denying his Motion to Dismiss Prosecution on Grounds of Double Jeopardy.[1] In 1998, Vance Haskell was convicted of first-degree murder and other charges related to the killing of Darrell Cooley in 1994. After filing a direct appeal and several post-conviction collateral relief petitions, Haskell filed a petition for habeas corpus relief in federal court. On August 1, 2017, the Third Circuit United States Court of Appeals granted Haskell's habeas petition on the basis of prosecutorial misconduct, and overturned Haskell's 1998 conviction for first-degree murder. *Haskell v. Superintendent Greene SCI*, 866 F.3d 139 (2017). This case is now poised for re-trial, pending appellate review of this Court's denial of Appellant's Motion to Dismiss.

## I.  BACKGROUND

At approximately 1:27 a.m. on December 10, 1994, Darrell Cooley was shot nine to eleven times by an Uzi-type gun at close range at an eastside Erie bar, Jethroe's Steakhouse. Cooley

---

[1] We note that Appellant has the right to file an interlocutory appeal from a trial court's pre-trial double jeopardy determination. *Commonwealth v. Bolden*, 373 A.2d 90 (Pa. 1977)(plurality opinion); *Commonwealth v. Haefner*, 373 A.2d 1094, 1095 (Pa. 1977)(*per curiam*)("pre-trial orders denying double jeopardy claims are final orders for purposes of appeal").

1

died of his wounds. Although the bar held over 100 patrons, few witnesses came forth to identify the shooter. After a lengthy investigation, four years later the prosecution presented four witnesses at trial that to varying degrees identified Haskell as the perpetrator and two more that placed Haskell with the same type of murder weapon at different times prior to the shooting. At trial, Roseanna Wayne, testified she was in the bar approximately ten feet away from the shooter. She identified Haskell in court as someone who "look[ed] like" the shooter. However, she also testified that she was not sure she could make a valid identification. (Trial Transcript, September 28, 1998, Day 2, pp. 58-59.)

Dorthea Roberts was also a patron of the bar. She testified at trial that she was also within feet of the shooter. (Tr. Day 2, p. 178). She heard approximately 12 shots. (Tr., Day 2, p. 183). In the courtroom, Roberts identified Vance Haskell as the shooter. (Tr., Day 2, p. 184). Robert's credibility was challenged on cross examination when it was shown that she told police shortly after the shooting that she did not know who the shooter was. (Tr., Day 2, p. 189-190). She also admitted that she was in jail awaiting trial on simple assault charges. (Tr., Day 2, p. 193).

Curtis Mathis provided a video-taped statement to police on March 7, 1997, identifying Haskell as the shooter. Mathis had smoked marijuana in Jethroe's parking lot with Haskell and witness, Antoinette Blue, shortly before the shooting. (Tr. Day 3, p. 93-107). Although at trial Mathis recanted his prior identification of Haskell, the prosecution was able to play his video-taped statement for the jury. (Tr. Day 3, p.94).

Another witness, Darrell Gamble, testified that he saw Haskell and Mathis run out the back of the bar after the shooting. (Tr. Day 3, p. 125). However, his credibility was compromised during cross examination when he admitted he had formerly identified another person as having run out the back door, rather than Haskell. (Tr. Day 3, p. 134).

2

Nicole Thompson testified that she had seen Haskell at a residence four days before the shooting at Jethroe's. Haskell had a gun similar to the weapon proffered at trial as the murder weapon. (Tr. Day 3, p. 155-157). Kenneth Henderson also testified he had seen Haskell with the subject firearm on several occasions before the shooting. (Tr. Day 4, pp. 20-25).

Antoinette Blue was a key witness.[2] It is her testimony that was the primary focus of the habeas claim and the central issue here. She testified that she had met Haskell approximately two weeks before the shooting. (Tr. Day 2, p. 216). On the night of the incident, she was smoking a marijuana "blunt" with him and others in the bar parking lot. (Tr. Day 2, p. 215-216). She testified that Haskell came into the bar sometime after she did. He then pulled out a gun and started shooting. (Tr. Day 2, p. 205). Blue did not identify Haskell as the shooter until three years later when she was in Erie County jail. (Tr. Day 2, p. 227).

At trial, John Moore, the Defendant's attorney attempted to challenge Blue's credibility on the basis of her prior theft convictions and her interest in receiving favorable treatment from the prosecution in exchange for her cooperation. At the time of trial she had been convicted of one theft related offense, a Criminal Attempt charge in 1997 but her thirty month probation sentence on that charge had not begun to run. She also had an ARD disposition for Retail theft in 1994 for which she appears to have completed a probationary period in 1995. According to court documents, at the time of trial she was on parole for disorderly conduct and resisting arrest to be followed by a probation sentence for the criminal attempt conviction. In addition she had pending retail theft and related charges in Mercer County from which she was released on bail posted by a professional bondsman.

---

[2] We note that Blue was on SSI for mental acuity difficulties or slow learning. (*Commonwealth v. Blue*, 733-1996, Sentencing Transcript, 11/15/1996, p. 9).

She testified that she got in contact with an Erie County detective earlier that year when she was in jail on disorderly conduct charges and offered to help in their investigation of Defendant. Cross examination revealed that Blue was sent from the Erie County Prison to a rehabilitation program and then she was paroled several months before the Haskell trial. She noted that she had been in jail before. Her testimony did not provide a complete picture of either her prior criminal history or her interest in receiving favorable treatment on pending charges as a result of her cooperation with the prosecution. She testified that she was on probation and had previously been convicted of theft a long time ago and was on probation for retail theft "...back in the day". (Trial Tr. Day 2, p. 226). She did not mention that she had been in jail in Erie County on a detainer warrant for a parole violation and a bench warrant for failure to appear at a sentencing in another case in Erie County. Blue adamantly denied expecting to get out of jail or expecting to "get something" out of testifying. (Tr. Day 2, p. 227, 231).

At the conclusion of the trial, Vance Haskell was found guilty of first-degree murder, possessing instrument of crime, aggravated assault, and reckless endangerment. On November 10, 1998, he was sentenced to a term of life imprisonment. He took a direct appeal. The Pennsylvania Superior Court affirmed his judgment of sentence on August 23, 1999. The Defendant filed several PCRA petitions, all of which were denied at the trial level and on appeal. Haskell's third PCRA Petition, filed on April 30, 2012, raised the same issue of prosecutorial misconduct at issue here. On May 1, 2012, the trial court denied PCRA relief since the petition was untimely.[3]

---

[3] The PCRA court opinion did not acknowledge Haskell's claim based on the "governmental interference" and/or "newly discovered evidence" exceptions to the one year filing limitation. 42 Pa. C.S.A. §9454(b)(1)(i),(ii).

4

Haskell then filed a petition for habeas corpus relief with the United States District Court for the Western District of Pennsylvania. United States Magistrate Judge, Susan Paradise Baxter denied Haskell's habeas petition.[4] The Third Circuit Court of Appeals reversed the Western District Court and granted Haskell's habeas petition. The Third Circuit found that witness Antoinette Blue proffered perjured testimony which the District Attorney failed to correct and that her testimony could have affected the judgment of the jury. *Haskell*, 866 F.3d 139, 150, 152. Specifically, the Third Circuit found that: (1) Blue lied about her criminal record and about whether she hoped to receive some benefit in her own pending criminal proceedings in exchange for testifying against Haskell, and (2) District Attorney Hayes failed to correct that lie and, in fact, bolstered it in his closing statement.

Haskell is currently awaiting re-trial before the Erie County Court of Common Pleas. On March 12, 2018, he filed a Motion to Dismiss Prosecution on Grounds of Double Jeopardy based on a finding of prosecutorial misconduct during Haskell's jury trial, as found by the Third Circuit. We denied Haskell's motion based on the fact that neither negligent nor reckless prosecutorial misconduct implicate double jeopardy concerns. *Commonwealth v. Basemore*, 875 A.2d 350, 356 (Pa. super. 2005). Furthermore, this Court concluded that the record did not support a finding of incessant or outrageous conduct on the part of the prosecution.

The trial court record has not been supplemented by additional testimony or other evidence concerning the conduct of the prosecution during the course of the criminal proceedings.

## II. DISCUSSION

The double jeopardy clause of the Pennsylvania Constitution prohibits re-trial of a defendant when the conduct of the prosecutor is intentionally undertaken to prejudice the

---

[4] According to the Third Circuit, the Commonwealth did not object to the District Court's on-the-merits review of Haskell's perjured testimony claim, since the state PCRA court dismissed Haskell's state claim as time barred without reviewing the merits. *Haskell*, 866 F.3d at 145.

5

defendant to the point of the denial of a fair trial. *Commonwealth v. Smith*, 615 A.2d 321, 325 (Pa. 1992). Negligent or reckless prosecutorial misconduct do not implicate double jeopardy concerns. *Commonwealth v. Basemore*, 875 A.2d 350, 356 (Pa. super. 2005). Double jeopardy bars retrial of the defendant where the prosecutor engages in "pervasive, incessant, and outrageous" conduct. *Basemore*, 875 A.2d at 354. In order to raise double jeopardy implications, prosecutorial misconduct must be deliberate, undertaken in bad faith and with a specific intent to deny the defendant a fair trial. The remedy of discharge without a fair and complete fact-finding procedure "is extreme and will not be invoked absent deliberate bad faith prosecutorial misconduct." *Commonwealth v. Santiago*, 654 A.2d 1062, 1085 (Pa. Super. 1994); citing *Commonwealth v. McElligott*, 432 A.2d 587, 590 (Pa. 1981).

## A. Habeas Corpus Standard vs. Double Jeopardy Standard

The applicable standard for the grant of a federal habeas corpus petition, as found by the Third Circuit in *Haskell*, is a determination that the state had knowingly presented or knowingly failed to correct perjured testimony which results in a reasonable likelihood that the perjured testimony could have affected the judgment of the jury. [5] The Court also observed that it was rejecting the "actual prejudice" tests in *habeas* cases. Critically, this standard differs significantly from the standard for the grant of a double jeopardy petition, which requires a determination not only that there was perjured testimony which may have affected the jury, but also that the prosecutorial misconduct was deliberate, undertaken in bad faith and with a specific intent to deny the defendant a fair trial. *Strong*, 825 A.2d at 669-670. It is particularly noteworthy that the Third Circuit seemed to take the position that in *habeas* cases involving prosecutorial conduct of the kind it found here that it didn't matter if it was the result of

---

[5] *Haskell*, 866 F.3d at 147, citing *United States v. Agurs*, 427 U.S. 97 (1976), holding modified by *United States v. Bagley*, 473 U.S. 667 (1985).

6

negligence. "Whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor." *Haskell, citing Giglio v. U.S.*, 405 U.S. 150, 154 (1972). Thus, there is a significantly higher bar for the granting of a double jeopardy motion.

We must view the facts as they exist in the record to determine if the double jeopardy standard has been met. The parties have stipulated to the factual record as developed by the Third Circuit in its review of Defendant's habeas claim and no evidentiary hearing was requested by either party. As a result, a determination of the double jeopardy claim, which requires a finding that the prosecution acted with the specific intent to deny Haskell a fair trial and in general a more searching legal analysis, is more challenging, requiring a close review of the entire trial court record.

In his Motion to Dismiss Prosecution on Grounds of Double Jeopardy the defendant focuses on the prosecutor Mathew Hayes' failure to correct Ms. Blue's false testimony concerning her expectation and receipt of favorable treatment in exchange for her cooperation.[6] Her testimony of course occurred within the broader context of the case and a thorough review of the factual setting is necessary.

**B. The Factual Setting: Blue's Prior Record, Her Expectation of Leniency and the Prosecutor's Response**

It is essential to have an accurate understanding of both Blue's actual criminal record, as it existed at the time of trial, as well as a time-line of significant events:

a. January 10, 1994 Blue Sentenced on Retail Theft (Erie County Docket #1510-1993)
   - Blue is accepted into the ARD program (no guilty plea).
   - Probation for 12 months

b. November 15, 1996 Sentenced on Disorderly Conduct and Resisting Arrest (Erie County Docket #733-1996)
   - Disorderly Conduct Sentence: 1 to 11 months' incarceration

---

[6] This was also the focus of the federal appeals court in granting Mr. Haskell a new trial.

7

      &bull;  Resisting Arrest Sentence: 2 years' probation, consecutive to above

c. July 3, 1996 Charged with Four Theft Related Counts (#1514-1996)

d. December 9, 1996 Paroled on disorderly conduct charge (#733-1996)

e. January 8, 1997 Enters a Negotiated Guilty Plea to Count I (out of four counts), Criminal Attempt (theft) (#1514-1996)

f. February 18, 1997 Blue Fails to Appear for Sentencing (#1514-1996)

g. February 21, 1997 Bench Warrant Issued for Failure to Appear at Sentencing (#1514-1996)

h. March 7, 1997 Non-Omittas (Probation/Parole Absconder)Warrant Issued (#733-1996)

i. February 9, 1998 Blue Arrested in Mercer County on Retail Theft based charges after a shoplifting spree (Mercer County Docket #334-1998)

j. February 19, 1998 Bond Posted by Professional Bondsman on Mercer County Charges

k. February __, 1998 Blue Transported to Erie County Jail Per Outstanding Bench Warrant (#1514-1996) and Non-Omittas Warrant for violation of her parole and probation for disorderly conduct and resisting arrest (#733-1996)

l. February – March 1998 While in Erie County Jail on Erie Warrants, Blue contacts Erie Police Department to let them know she could identify person who shot Cooley

m. March 18, 1998 Blue testifies against Haskell at Preliminary Hearing. Cross examined by Haskell's attorney for the first time.

n. March 20, 1998 Blue's parole and probation at #733-1996 Revoked (Disorderly Conduct and Resisting Arrest).
    &bull;  Resentenced on Disorderly Conduct: 1-11 months' incarceration
    &bull;  Resentenced on Resisting Arrest: 3-12 months' Erie County Jail, concurrent

o. March 20, 1998 Sentenced on Criminal Attempt (theft) # 1514-1996 (based on plea one year ago prior to absconding) to 30 months' probation, consecutive to #733-1996

p. March __, 1998 - June 15, 1998 Blue Sent to White Deer Run Rehabilitation Program (#733-1996)

q. March 31, 1998 Attorney McConnell assigned as Blue's counsel in Mercer County

r. April 22, 1998 Blue's Mercer counsel, Attorney McConnell, sends note to Mercer County D.A. Jim Epstein, Esq., noting that Detective Skindell had reported to Mercer

County D.A.s office that Blue was helping in them in the Haskell prosecution. Complains that Mercer County ADA Farrone "is not willing to offer her [Blue] anything less than pleas to single counts of retail theft, unsworn falsification and I believe receiving stolen property." He notes this was the same plea offered Blue at Blue's Preliminary Hearing, prior to her testimony in the Haskell case.

s. April 30, 1998 Hayes sends Discovery Letter Sent to Attorney Moore (Haskell's Attorney) describing Blue's Mercer charges and prosecution's efforts to assist Blue in Mercer by making Mercer sentencing judge aware of her cooperation. Also provided copy of Blue's criminal record.

t. May 27, 1998 Suppression Hearing

u. June 15, 1998 Order of Parole (Erie County #733-1996, Disorderly Conduct)

v. September 1998 Blue Testifies for Prosecution in Haskell Trial

w. November 3, 1998 Blue Enters Guilty Plea to Two of Mercer County Charges (Mercer #334-1998)
   ● Retail Theft
   ● Unsworn Falsification

x. **December 9, 1998** Erie County D.A. Hayes writes to Mercer County and advises sentencing Judge of Blue's cooperation. Also notes he did not previously promise Blue any assistance, except to write this letter. Unknown when Hayes told Blue he would write the letter.

y. **December 9, 1998** Blue Sentenced to Retail Theft and Unsworn Falsification, 1 to 4 years' incarceration, sentence suspended. Probation for 18 months, consecutive to existing sentences, plus costs.

### 1. The Preliminary Hearing

At the preliminary hearing in this case, Blue was called to testify that Haskell was the shooter. She stated that at that time she was not in the Erie County Jail but living on East 7th Street. [7] (Preliminary Hearing Tr., p. 18) Mr. Moore also asked her if she had any other charges pending and she falsely testified that she only had a probation violation for Disorderly Conduct. Later she was asked on cross examination about why she was in the Erie County Jail at the time

---

[7] It is not clear how this would have been accurate but if it was she obviously didn't need to be released right after the preliminary hearing.

that she was talking with another person about going to the police. Blue testified that she was in jail at that time on a violation of her disorderly conduct probation (Erie County #733-1996). It would appear that that would have been after being transported to the Erie jail from Mercer County. If so, a more complete answer would have included the fact that she was in jail not only for violating her parole (rather than probation) at Erie County Docket number 733-1996, but also because she failed to appear for her sentencing at Erie County Docket number 1514-1996.[8]

Blue also testified that she was in contact with Erie Police Detective Skindell and gave a videotaped statement concerning the murder. She was never asked whether she was promised anything by the detective or about any expectation of favorable treatment in return for her cooperation. She was only asked if she had ever talked to this other woman about whether cooperating would help her get out of jail. She said she had not talked to that woman about it. (PH Tr., p. 49). Blue also said that it never occurred to her to talk to this other woman about it. She was not asked about talking to Mr. Hayes, the prosecutor assigned to her case and there is nothing in the record to indicate that she talked to any other representative of the government except Skindell.

Following the preliminary hearing Attorney Hayes responded to the defendant's discovery request. On April 30, 1998, Hayes sent Haskell's trial counsel Hayes' entire file in response to the defense Attorney Moore's Motion for Discovery. Although the contents of that disclosure are not entirely a part of the record, the prosecutor's letter to defense counsel notes that he has provided a complete copy of Blue's prior record and an explicit reference to Blue's pending

---

[8] While Blue had acquired retail theft-based charges in Mercer County, as of the time of her testimony at the preliminary hearing, she had posted bond in Mercer and therefore, she was not in jail for the Mercer charges.

charges in Mercer County.[9] In the enclosure letter, Attorney Hayes states, in relevant part, as follows:

> As to Antoinette Blue, I will check with Detective Skindell to make sure I have all information regarding any statements made. I have enclosed Antoinette Blue's prior record. Also I am aware that Ms. Blue faces a misdemeanor retail theft charge in Mercer County. I spoke with the prosecutor in that case and he explained he had already arrived at Plea Agreement in her case. That plea arrangement was reached prior to his knowledge of Ms. Blue's involvement in the present homicide. I also explained that Ms. Blue was assisting in this prosecution. He indicated to me that this assistance would not alter his approach to his prosecution. He indicated he would make the assistance known at the time of her sentencing in Mercer County...
>
> Finally, Detective Skindell spoke with the prosecutor in Mercer County regarding Antoinette Blue. Essentially, the prosecutor told me that Detective Skindell relayed the same information as I had, and the prosecutor's response was the same. The only understanding I am aware of is for Ms. Blue's cooperation. We would make the sentencing Judge aware of this cooperation.

(April 30, 1998, letter from Matthew R. Hayes, First Assistance District Attorney to John H. Moore, Esq., p. 2).

Thus, even if Blue lied about her pending charges at the preliminary hearing, Attorney Hayes took appropriate steps to correct her testimony by providing a complete copy of Blue's prior record and notice of her pending Mercer County charges. In this same letter, Hayes also made Moore aware of the fact that the Mercer County DA had already made a plea agreement with her without any knowledge of her involvement in the homicide prosecution in Erie and the only thing he would do is make her cooperation known to the sentencing judge. This notion is essentially confirmed by Mr. McConnell, Blue's appointed counsel in his note to the Mercer County DA on April 22, 1998. Mr. Hayes further pointed out to Mr. Moore that the only thing that he would do for Ms. Blue was to let the Mercer County sentencing Judge about her cooperation. There is nothing in the record from which to conclude that there was other action

---

[9] He also notes that all statements of which he is aware are in Mr. Moore's possession and presumably this would include Ms. Blue's taped statement to Detective Skindell but this is not clear.

11

taken by the prosecution on her behalf. This letter provided full disclosure of Blue's criminal history, both past and pending, as well as notice of the prosecutor's attempt to obtain favorable treatment for Blue.

## 2. The Trial Testimony

The key questions are whether Blue lied at trial about her criminal history and perhaps more importantly about whether she expected and received lenient treatment as a result of her cooperation. Although the focus of the Third Circuit's determination, as well as the Defendant's present Motion for Dismissal, is Blue's responses to questions about her expectation of leniency, the searching inquiry required of a double jeopardy analysis requires a contextual examination of the trial testimony of this important witness.

We begin by noting that as of the time of trial counsel for Mr. Haskell and implicitly the Defendant himself, were aware of the nature of Blue's testimony, the fact that she had been in jail in both Mercer and Erie County, that she had been resentenced in Erie County, her prior criminal history and the fact that the prosecutor committed to telling the sentencing judge in Mercer about her cooperation in the Haskell case.

The issue arose at trial as to Blue's jail status after she testified favorably for the prosecution at the preliminary hearing. She testified at the trial in September of 1998, on cross examination that she was in jail after the preliminary hearing until she was released to a "rehab" program. (Trial Tr. Day 2, pp. 230-231). Her testimony in that regard appears correct. Two days after the preliminary hearing, Blue had a revocation and resentencing hearing on March 20, 1998, at #733-1996 (disorderly conduct and resisting arrest). Her parole at Count 1 (disorderly conduct) was revoked her probation at Count 2 (resisting arrest) was revoked and a new sentence imposed of 3 to 12 months in the Erie County Prison, to be served concurrent to Count

12

1. Blue may have served some of her incarceration time at the White Deer Run rehabilitation facility but she was not paroled until June 15, 1998. Her testimony that she was not released immediately after her preliminary hearing testimony in March of 1998 was correct. [10] Accordingly, there was nothing in that regard for Hayes to correct.

In addition at the same time of her revocation sentence Ms. Blue was sentenced to a consecutive sentence of 30 months on the Criminal Attempt charge she had pled to the previous year. It should be noted that with regard to the new sentence imposed on the Criminal Attempt the existence of the pending charges in Mercer County were not subject to inclusion in the sentencing guidelines and her prior record score would have only reflected the misdemeanor convictions for Disorderly Conduct and Resisting Arrest.

On further cross examination, Blue was asked about being in jail at the time she contacted Skindell:

Q. Whereabouts were you in jail?

A. Well, I – where was I in jail at?

Q. Which jail were you in?

---

[10] The Third Circuit seems to have concluded that Ms. Blue was released from jail almost immediately following her preliminary hearing testimony after a parole revocation proceeding. On the face of the record this is not true. Both her parole and probation sentences were revoked and she was re-sentenced to a new combined sentence of three to twelve months in the Erie County prison followed by a consecutive new sentence on the Criminal Attempt conviction of 30 months on probation. Her aggregated combined sentence was 3-12 months followed by 30 months probation. A parole order was not signed until June 15, 1998 and only after she completed an inpatient drug rehabilitation program. For reasons not apparent from the record the federal appeals court seemed to conclude that the outcome of the parole and probation revocation and the separate sentencing proceeding was the result of leniency granted at the request of the prosecutor and that this is what Ms. Blue sought and anticipated. Haskell, 866 F.3d at 143. There is nothing in the record to even suggest that the Erie County District Attorney's Office did anything to bring her cooperation to the attention of the sentencing judge in those cases. Blue's Criminal Attempt sentence was, in fact, within the standard range of the Pennsylvania Sentencing Guidelines, which called for a minimum sentence of probation or some other form of community based supervision. Judge Connelly accordingly sentenced Blue to "restorative sanctions 30 months' probation." (March 20, 1998 Sentencing Order, Com. v. Antoinette Blue, Erie County Criminal Docket Number 1514-1996).

13

A. On 18th.

Q. Erie County Jail?

A. Yeah.

Q. Was that the first time you'd ever been in jail?

A. No.

Q. What charges were you in jail for?

A. Disorderly conduct.

(Trial Tr. Day 2, p. 226). Moore asks Blue if her [March of 1998] time in the Erie County Jail was the first time she had been in jail. She says no. If we read Moore's follow up question, "What charges were you in jail for?" as asking about what Blue had been in jail for before February of 1998, her last statement is true. She had not been in jail for retail theft #1510-1993 (ARD) and she had not been jailed for Resisting Arrest Count 2 at #733-1996 (probation only). She had only been given jail time on the Disorderly Conduct Count 1 at #733-1996 (November 15, 1996 Order sentenced her to 1 to 11 months), after which she was paroled on December 9, 1996.

However, if we read Moore's question as asking what charges Blue was in the Erie County Jail for at the time she contacted Skindell in March of 1998, her answer is definitely incomplete. She fails to raise the fact that in addition to a warrant for her probation violation at #733-1996, she was also detained on a bench warrant for her failure to appear for her sentencing at 1514-1996 on the Criminal Attempt conviction. Ostensibly since Mr. Moore had been provided with her criminal history he would have been aware of this. He chose not to pursue it as he continued his examination of the witness. Mr. Hayes did not correct her testimony in his

14

re-direct of Ms. Blue. Since there was no evidentiary hearing concerning the conduct of either lawyer their rationale for their approach is not known.

Blue's testimony continues:

Q. Was that a violation of your parole?

A. What?

Q. Were you on parole at the time? [When she was in Erie County Jail]

A. Yeah, I was on probation. I still is on probation. (sic)

Q. What were you on probation for, what crimes?

A. I just told you, disorderly conduct.[11]

Q. Have you ever pled guilty to a theft charge?

A. Yeah, I did my time for that.

Q. How long ago?

A. A long time ago.

Q. Is that what you were on probation for?

A. No, I just said I was on probation for disorderly conduct.

Q. Weren't you on probation for retail theft?

A. That was back in a day.

(Trial Tr. Day 2, p. 226). Blue's testimony regarding the retail theft charge is true. While perhaps Attorney Moore is attempting to get Blue to admit to her January 8, 1997 Guilty Plea and the March 20, 1998 probationary sentence for Criminal Attempt at #1518-1996 (Theft by Unlawful Taking, Receiving Stolen Property, and Criminal Conspiracy had been *nolle prossed*), Moore does not ask Blue about that. He asks her if she was ever on

---

[11] Blue was actually on probation for resisting arrest and on parole for disorderly conduct. Both convictions stemmed from her #733-1996 case.

15

probation for retail theft. Blue was only on probation for retail theft following her 1994 conviction at Docket Number 1510-1993. As of the time of her testimony at the Haskell trial in September of 1998, Blue had long completed serving her sentence (12 months of ARD diversionary probation) for Retail Theft; hence her reply, "Back in a day." Blue is correct in saying that at the time of trial she was not on probation for retail theft.

Thus, Blue's testimonial shortcomings are limited to the fact that: (1) she did not fully testify that she was in the Erie County Prison not only for a violation of her probation for resisting arrest, Count 2 at #733-1996 (which she refers to as disorderly conduct, which was Count 1 at that same docket), but also for failing to appear for sentencing at #1514-1996[12]; and (2) she denied having personal expectations of assistance for her Mercer County charges in exchange for her cooperation. Ameliorating these shortcomings, we find that: (1) Hayes fully disclosed Blue's Erie County criminal record as well Blue's pending charges in Mercer County in his April 30, 1998 letter to the defense prior to trial; and (2) there is no evidence that Hayes, Skindell or anyone else connected with the Haskell prosecution gave Blue any promise of receiving a more lenient sentence. On the contrary, Hayes explicitly told Blue he could not help her.

The next question is whether Blue committed perjury by denying that she had ever asked for, been promised, or actually received favorable treatment in exchange for her testimony against Haskell. Throughout her testimony Blue denied hoping for or being promised favorable treatment in her own criminal cases. The record reveals a telling letter from Hayes to the Mercer County Court, written after the Haskell trial. In the letter, Hayes is, in fact, suggesting asking for

---

[12] Blue also failed to discuss her pending charges in Mercer County, but we find that she was not explicitly asked about those.

16

leniency in Blue's Mercer Sentencing. However, Hayes emphasizes that he had explicitly told

Blue that he would be unable to help her in her Mercer County charges:

> In September, 1998, I prosecuted an individual by the name of Vance Haskell for homicide and related charges. On October 1, 1998, he was found guilty of 1st degree murder and all other charges....Ms. Blue was one of the 2 eyewitnesses that could identi[f]y the defendant as the shooter. Consequently, Ms. Blue's testimony was very important....Throughout, Ms. Blue has indicated to me that her motivation for testifying was that a murderer should not go free. Overall, I was impressed with her attitude and cooperation.
>
> Finally, I made Ms. Blue aware of the fact that I could not and would not alter the outcome of her charges in Mercer County. She understood this and has not asked for assistance in that regard, except that I write this letter.

(Letter from D.A. Hayes to Court of Common Pleas of Mercer County, 12/9/1998).

At trial, Blue testified:

> Q. And did you contact the District Attorney's Office because you wanted some help to get out of jail?
>
> A. Get out for what? I wasn't facing a lot of time, what did I need help for?
>
> Q. So you didn't – this never came into your mind that you wanted to get help to get out of jail?
>
> A. No. Get out for what?
>
> Q. Then what was it that caused you to get in touch with the police and tell them that you knew about this shooting?
>
> A. Because it was still going on, and I didn't know that he was in jail. When he was out, I didn't say nothing because I was scared.

(Trial Tr. Day 2, p. 227). She in fact made contact with the Erie police detective. Ms. Blue's

testimony about "not facing a lot of time" is certainly an optimistic assessment. [13] Whether it

---

[13] We note that Blue was sentenced on March 20, 1998 in connection with her 1514-1996 Criminal Attempt plea (entered on January 8, 1997 before Blue absconded). In 1997, long before Blue's contact with the Haskell prosecution, Blue entered a plea to Count 4: Criminal Attempt, with the three remaining counts of Theft, Receiving Stolen Property and Criminal Conspiracy *nolle prossed* and on March 20, 1998, Blue was sentenced to 30 months of probation and community service. Blue was also sentenced to 1 to 11 months' incarceration, concurrent with 3 to 12 months' incarceration, at her revocation and

ever "occurred to" Blue that her testimony might help her "get out of jail" is also a nebulous matter, as it pertains to her own thoughts.

On re-direct, Prosecutor Hayes asks Blue:

> Q. ... Have you been promised anything by us to come in here and explain what you just explained?
>
> A. No.
>
> Q. Do you anticipate receiving any consideration for it?
>
> A. Do I what?
>
> Q. Do you expect to get something out of testifying?
>
> A. No, sir.

(Trial Tr. Day 2, p. 231).

On re-cross, Blue was consistent in her position that she would receive no benefit for her testimony:

> Q. You didn't ask anybody to take [your testimony] into consideration?
>
> A. No, sir.
>
> Q. You don't think anybody was aware of that?
>
> A. No, sir.

(Trial Tr. Day 2, p. 232). Haskell's counsel, who was fully aware that the prosecutor intended to inform the Mercer Court about Blue's cooperation, asks nothing in response to what is without doubt, at a minimum, a misleading answer. Moore never asks Blue about whether Hayes had promised Blue to contact Blue's Mercer County sentencing judge on Blue's behalf, despite the fact that Hayes explicitly told Moore about his plan to help Blue in Hayes' April 30, 1998 letter to Moore. For reasons that that are not at all apparent never directly addresses the issue.

resentencing at #733-1996 (disorderly conduct, resisting arrest). In addition, she was facing pending charges in Mercer County on retail theft related charges.

18

On the other hand Hayes clearly knows that Blue's testimony that she doesn't expect or at least hope to get anything out of testifying at trial is unlikely to be true. He knows that he has told Blue that although "he could not and would not alter the outcome of her charges in Mercer County." (December 9, 1998 letter from Hayes to Mercer County). He also told her that he would write a letter on her behalf at the time of her sentencing.

So even while counsel for the defendant chose not to pursue it or bring Ms. Blue's cooperation to the attention of the jury through further impeachment or otherwise (i.e., introducing the prosecutor's discovery letter) Hayes was required to somehow bring up the matter so that the jury would be fully advised of Ms. Blue's arrangement, such as it was. In light of defense counsel's approach, how this was to be done is not clear but it something needed to be done. Since neither Mr. Moore nor Mr. Hayes provided further testimony on this point in a separate evidentiary hearing we are left with conjecture. Nonetheless, the prosecutor cannot let stand the erroneous impression that there was no favorable treatment being afforded to the witness. This is so even though given Mr. Moore's reticence in addressing the issue directly makes it less clear how it was to be accomplished. A prosecutor's long recognized duty to insure fundamental fairness must prevail.

### 3. Closing Argument

In his closing argument to the jury Moore predictably challenges the credibly of Ms. Blue's testimony:

> ...If Ms. Blue is telling you whatever she thinks she needs to say to get what she wants out of the district attorney or the police or to get out of jail or to stay out of jail then you have to consider whether or not her testimony has anything whatsoever to do with the truth or the reality of what happened in December at Jethroes. (Trial Tr., Day 5, p. 15)

\* \* \*

19

I'd ask you to consider how many of the Commonwealth's witnesses have something to gain or a reason to help themselves or a reason to help themselves or a reason to tell Mr. Hayes what they think he wants them to say? How many are looking to get out, like Antoinette Blue did into a drug program and out of jail? (Trial Tr., Day 5, p.29)

In his closing argument, Prosecutor Hayes addressed Blue's credibility and asserts that she honestly incriminated herself by admitting to smoking marijuana the night of the murder:

> Antoinette says that she sees Haskell over at the [sic] Felicia Clark's place. She also sees him out in the parking lot, and here she is the one that is trying to get all this benefit from this—this valuable testimony. And what she says she's doing out there, she's committing a crime. She's smoking marijuana. That should help her pretty well.

(Trial Tr., Day 5, pp. 54-55). Hayes admits that Blue may have a motive for lying but argues that she is not lying:

> So, yes, she gives her statement four years later; yes, it's during the time she's in prison. Is it a lie? Of course not. It's not a lie. Everything else that she says is consistent. Everything she does in terms of placing herself where she is consistent. Yes, she has a motive for lying, but again, is the information that she gives accurate or not based on everything else you heard? Of course it is. She's not a liar, at least not about what happened here. And, if she's not a liar and if her information is good, here's your man.

(Trial Tr., October 1, 1998, pp. 57).

The federal appeals court seemed to conclude that Mr. Hayes' comments constituted improper vouching for her credibility and bolstering her perjured testimony. In Pennsylvania a prosecutor's argument on witness credibility constitutes impermissible "vouching" and therefore prosecutorial misconduct in specific circumstances. The well established standard was recently discussed by the Superior Court in *Commonwealth v. Lawrence*, 165 A.3d 34

20

(Pa. Super 2017). Quoting from *Commonwealth v. Judy*, 978 A. 2d 1015 (Pa. Super 2009), the *Lawrence* Court noted:

> It is settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. However the prosecutor may comment on the credibility of witnesses. Further a prosecutor is allowed to respond to defense arguments with logical force and vigor. If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility.

*Lawrence*, 165 A.2d at 43. Specifically the Court reiterated the standard reiterated by our Supreme Court in *Commonwealth v. Chmiel*, 30 A.3d 1111 (Pa. 2011):

> Improper bolstering or vouching for a government witness occurs where the prosecutor assures the jury that the witness is credible, and such assurance is based on either the prosecutor's personal knowledge or other information not contained in the record.

*Lawrence*, at 42-43.

Here it is clear that Mr. Hayes was responding to defense counsel's closing argument challenging Ms. Blue's credibility. He did not allude to any information not in the record or anything about his own personal knowledge of the witness. He argued that Ms. Blue was not a liar and pointed to evidence in the record to support that conclusion. This included noting her consistency with other witnesses, her fear of the shooter and the fact that two other witnesses placed her at the scene of the crime in a position to see the shooting. Indeed he noted that she has a motive for lying.

### 4. Conclusions

In light of the record, we find the following: (1) Attorney Hayes and Detective Skindell did take measures to discuss Blue's cooperation with the Mercer County prosecutor; (2) Attorney Hayes explicitly told Blue that he would not be able to help her with her charges in Mercer County; (3) Mr. Hayes either directly or through Detective Skindell told Blue that the sentencing

21

judge in Mercer County would be notified about her cooperation in the Haskell case; (4) the prosecutor did send a letter to the sentencing judge advising him of her cooperation; (5) As a part of a plea agreement, the Mercer County prosecutor agreed to recommend (and Blue received) a sentence of probation on her Mercer County charges[14] (5) Attorney Hayes explicitly informed Attorney Moore that he and Skindell were trying to get lenient treatment for Blue at the time of her sentencing in Mercer County; (6) there is nothing in the record to demonstrate that Blue received favorable treatment in any of her Erie county criminal matters as a result of her cooperation; and (6) prior to trial, Hayes provided Moore with Blue's prior record and informed him of Blue's pending charges in Mercer County; (7) Attorney Hayes' comments in closing argument regarding Ms. Blue's credibility do not constitute impermissible "vouching"; and (8) Hayes' failure to reveal to the Haskell Court and jury Hayes' promise to Blue tell Blue's Mercer County sentencing judge of Blue's cooperation, was error.

## C. Double Jeopardy

While the Third Circuit determined that Mr. Hayes' overall conduct in failing to correct Blue's perjured testimony about her pending charges and her hope for lenient treatment was sufficient to grant habeas relief, this Court needs to determine whether that conduct was such that Mr. Haskell should be barred from being re-tried. As noted above, in order to support a double jeopardy claim, prosecutorial misconduct must be deliberate, undertaken in bad faith and with a specific intent to deny the defendant a fair trial. *Commonwealth v. Basemore*, 875 A.2d 350, 356 (Pa. super. 2005).

> The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, § 10 of the Pennsylvania Constitution protect a defendant from repeated criminal prosecutions for the same offense.

---

[14] Although the Court imposed a "suspended sentence" of one to four years, Pennsylvania does not recognize suspended sentences *per se*.

22

Ordinarily, the law permits retrial when the defendant successfully moves for mistrial. If, however, the prosecution engages in certain forms of intentional misconduct, the Double Jeopardy Clause bars retrial. Article I, § 10, which our Supreme Court has construed more broadly than its federal counterpart, bars retrial not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial. An error by a prosecutor does not deprive the defendant of a fair trial. However, where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied.

*Commonwealth v. Adams*, 177 A. 3d 359, 371 (Pa. Super. 2017). Intentional prosecutorial misconduct "raises systematic concerns beyond a specific individual's right to a fair trial that are left unaddressed by retrial." *Graham*, 109 A.3d at 736. On the other hand, dismissal of criminal charges "should be utilized only in the most blatant cases." *Commonwealth v. Burke*, 781 A.2d 1136 (Pa. 2001).

We must address the question of whether Attorney Hayes intended to deprive Haskell of a fair trial. A comparative examination of the relevant case law is instructive. The seminal prosecutorial misconduct / double jeopardy case is *Commonwealth v. Smith*, 615 A. 2d 321 (Pa. 1992). In *Smith*, the prosecution intentionally withheld key physical evidence at trial, suppressed evidence while arguing for the death penalty on appeal, and attempted to discredit a truthful state trooper who had conducted the murder investigation. In addition, Smith claimed that the Commonwealth knowingly denied the existence of an agreement providing favorable sentencing treatment in exchange for his testimony against Smith. *Id.* at 180.

The Pennsylvania Supreme Court stated:

> Deliberate failure to disclose material exculpatory physical evidence during a capital trial, intentional suppression of the evidence while arguing in favor of the death sentence on direct appeal, and the investigation of Corporal Balshy's role in the production of the evidence rather than its own role in the suppression of evidence constitute prosecutorial misconduct such as violates all principles of

23

justice and fairness embodied in the Pennsylvania Constitution's double jeopardy clause.

*Id.* at 183. On the basis of these facts, the *Smith* court held:

> We now hold that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

*Id.* at 186.

Similarly, in *Commonwealth v. Martorano*, 741 A.2d 1221 (Pa. 1999), the Pennsylvania Supreme Court found that the prosecutor acted in bad faith throughout the trial, consistently making reference to evidence that was ruled inadmissible, defying the court's rulings on objections, and in a "Machiavellian" tactic, repeatedly insisting that there was fingerprint evidence linking defendants to the crime when he knew for a fact that no such evidence existed. The Supreme Court held that while these tactics do not constitute the concealment of evidence as in *Smith*, it deprived defendant of a fair trial. This is the kind of prosecutorial overreaching to which double jeopardy protection applies.

Both *Smith* and *Martorano* require intentional misconduct. Where there is no such intentional misconduct, Pennsylvania Courts have not found a bar to retrial. In *Commonwealth v. Burke*, 781 A.2d 1136 (Pa. 2001) the Supreme Court held that dismissal of charges was not appropriate where the Commonwealth's failure to provide discovery materials stemmed from miscommunication between the police departments and/or police mishandling of the evidence. Because there was no intentional misconduct, as in *Smith*, double jeopardy protections were not implicated. *Id.* at 1145.

Similarly, in *Commonwealth v. Moose*, 623 A.2d 831 (Pa. Super. 1993), a prosecutor failed to inform the defense until the first day of trial of its intent to call a witness who would

24

testify that the defendant had admitted to him while they were in jail together that the defendant had raped the victim and hit her in the head with a rock. The Superior Court found this case distinguishable from *Smith* since the *Moose* prosecution did inform the court and defense counsel of the witness's statement, albeit at the last minute. "There is no evidence, as there was in *Smith* that the Commonwealth intended to forever conceal the witness statement." *Id.* at 837. Moreover, this did not involve the withholding of a "crucial piece of physical evidence" that clearly exculpated the defendant. There was no "clear, calculated orchestration by the prosecution to deny [the defendant] a fair trial." *Id.*

In *Commonwealth v. Kearns*, 70 A.3d 881 (Pa. Super. 2013), the Pennsylvania Superior Court reversed the grant of double jeopardy relief after the prosecution failed to turn over police reports and witness statements to defense counsel. The Superior Court found that although the prosecution acted in a grossly negligent manner, it did not act intentionally. "Nevertheless, gross negligence on the part of the Commonwealth is never a sufficient basis upon which to bar retrial on double jeopardy grounds." *Id.* at 886.

Even where the prosecutorial misconduct is intentional, it must rise beyond the level of negligence, gross negligence or even reckless conduct. In *Commonwealth v. Basemore*, 875 A. 2d 350 (Pa. Super. 2005), the Pennsylvania Superior Court found that a *Batson* violation did not constitute prosecutorial misconduct to such a degree that it triggered double jeopardy protection, despite the fact that the prosecutor acted intentionally. The record indicated a conscious strategy to exclude African-American jurors in an improper use of peremptory challenges during *voir dire*. Nonetheless, the Superior Court concluded:

> It is well-settled that a *Batson* violation constitutes intentional misconduct by a prosecutor and a violation of the defendant's constitutional rights. However, Appellant has provided no persuasive legal support for his claim that a *Batson*

25

violation... constitutes the type of prosecutorial misconduct that *Smith, Martorano, Breit,* and *Rogan* were designed to remedy.

*Id.* at 355.[15]

In *Commonwealth v. Adams,* 177 A.3d 359, 371(Pa. Super. 2017), the Pennsylvania Superior Court found that the police and prosecutor's failure to turn over a video recording of a witnesses interview, even though intentional, was not a result of intentional bad faith. The *Adams* court noted:

> Of utmost concern, however, is Corporal Zeybel's admission that he enters only those [videotaped witness statement] recordings into evidence that include inculpatory, and not exculpatory, statement; that he does so in order that the multitudinous recordings will not become a "thorn" in the side of the state police; and that he does so in open contravention of police regulations. These actions are intentional. However, absent a showing that Corporal Zeybel intentionally withheld or destroyed evidence in Appellant's case in an attempt to deprive Appellant of a fair trial, we agree with the trial court that dismissal is not the appropriate remedy.

*Adams,* at 374. (emphasis added).

Finally, in the case most similar to ours, the Pennsylvania Superior Court in *Commonwealth v. Strong,* 825 A.2d 658, 669-670 (Pa. Super. 2003), held that there was no violation of the double jeopardy clause where a key witness in a murder trial lied on the stand denying his explicit deal with the prosecution for leniency with respect to his own criminal charges in exchange for his testimony against his co-defendant. Strong's co-defendant, who was present the night of the murder, testified in a later proceeding that he lied during Strong's trial. He was asked whether he had an agreement with the Commonwealth regarding his own charges and he had denied any *quid pro quo.* In fact, the witness did have an understanding with the Commonwealth that if he testified against Strong he would receive a minimum sentence in his own case. The prosecutor told him not to say anything about the deal they had. While the

---

[15] *State of New Mexico v. Breit,* 122 N.M. 655 (1996); *State of Hawai'i v. Rogan,* 91 Hawai'i 405 (1999).

26

Superior Court held that the prosecution had committed a clear *Brady* violation, the *Strong* court concluded that, "the evidence did not support a finding that the Commonwealth specifically intended to deprive defendant of a fair trial." *Strong*, 825 A. 2d at 670. The court found that "Although, as in *Moose*, the district attorney's behavior 'represented a breakdown in our administration of justice,' the evidence does not support a finding that the Commonwealth specifically intended to deprive Strong of a fair trial." *Id.* "The prosecutor's conduct, while egregious, does not rise to the level of subversive tactics present in *Smith*." *Id.*

Here, there is not even the suggestion of an explicit agreement to keep a cooperation agreement for favorable treatment from the jury or the Court. Hayes fully disclosed to defense counsel not only the exact parameters of the Commonwealth's effort to effect leniency for her at the time of sentencing but as required Blue's criminal history. The failure to correct Blue's inaccurate testimony about expectations for leniency in the Mercer County matters and specifically the prosecutor's promise to tell the sentencing judge about her cooperation in the case, while certainly of significant concern, does not, in the absence of other evidence, rise to the level of the kind of pervasive intentional misconduct from which an intention to deprive Mr. Haskell of his right to a fair trial can be implied. Mr. Hayes' error arose in circumstances where defense counsel had been advised in writing of the contours of the prosecutor's commitment to Ms. Blue and chose not to bring it directly to the attention of the jury.

## III.   CONCLUSION

Upon a review of the facts, we do not find that prosecutor Hayes engaged in pervasive, incessant, or outrageous conduct, nor do we find that he intentionally undertook to prejudice the

27

defendant to the point of denying him a fair trial. Accordingly, this Court entered its Order of June 21, 2018 denying Mr. Haskell's Motion to Dismiss.

BY THE COURT:

John A. Bozza, Senior Judge

cc: District Attorney's Office
Alison M. Scarpitti, Esq.

28